THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEAN S. HARRIS, Appellant.

Second Department, July 8, 1985

**OPINION OF THE COURT**

O'CONNOR, J. P.

On March 10, 1980, defendant Jean Harris test-fired her .32 revolver at her Virginia home, placed the loaded gun into a car along with several rounds of ammunition, and headed for New York. At approximately 10:30 P.M., after a trip of some five hours, she arrived in Purchase, New York, at the home of cardiologist Herman Tarnower, entered through the garage, and went upstairs to the second floor, where she found him in bed. Five shots later, Dr. Tarnower was dead.

Having indicted defendant for murder in the second degree and lesser related crimes, the People theorized at trial that she had been unhappy over the loss of the affections of Tarnower, her companion and paramour for over 13 years, and had intentionally shot him, causing his death. Defendant maintained, and maintains to this day, that the shooting was an accident; that as a result of setbacks in her career, she had decided to end her life on the grounds of the Tarnower estate that she had come to regard as her home; and that in a struggle to prevent her from committing suicide the doctor had accidentally been shot. Faced with conflicting versions of the facts, the jury resolved the conflict in favor of the People, finding defendant guilty as

charged. That conviction was subsequently affirmed (*People v Harris,* 84 AD2d 63, *affd* 57 NY2d 335, *cert denied* 460 US 1047), and defendant is presently serving a prison term of 15 years to life.

In May 1983, more than two years after the judgment was rendered, defendant moved in the County Court, pursuant to CPL article 440, for an order vacating her conviction and directing a new trial, claiming that her "conviction * * * was the result of deprivations of * * * fundamental constitutional rights". The court denied the motion without a hearing, ruling that said motion was procedurally barred since the claims proffered, while not raised on appeal, could have been, and that, in any event, insufficient facts were alleged to support those claims. We are now asked to determine whether the County Court properly denied the motion.

### INTRODUCTION

CPL article 440, which codifies the common-law writ of error coram nobis, permits the court in which a judgment of conviction has been entered, upon defendant's motion, to vacate the judgment on several enumerated grounds. Included among these grounds is, as defendant here alleges, that the judgment was "obtained in violation of a right * * * under the constitution of this state or of the United States" (CPL 440.10 [1] [h]).

Nonetheless, this procedure, which is designed to inform a court of facts not reflected in the record and not known at the time of judgment that would, as a matter of law, undermine the judgment, cannot be used as a vehicle for a second appeal or as a substitute for direct appeal (*see, People v Crimmins,* 38 NY2d 407; *People v Donovon,* 107 AD2d 433). Indeed, CPL 440.10 (2) specifically provides, insofar as pertinent here, that the motion must be denied when the grounds or issues raised have been determined on appeal (concededly not the case at bar) or when: "(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him". Subdivision (3) of the same section further narrows the availability of the procedure by permitting the court, in its discretion, to deny the motion when, *inter alia,* "(a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defen-

dant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal. This paragraph does not apply to a motion based upon deprivation of the right to counsel at the trial or upon failure of the trial court to advise the defendant of such right". If the motion is not barred on these procedural grounds, the court will consider it on the merits (see, CPL 440.30 [2]).

Assuming the court reaches the merits, then it must grant the motion without conducting a hearing, if the moving papers allege a ground constituting a legal basis for the motion and supported by uncontroverted facts (CPL 440.30 [3]). On the other hand, the court may deny the motion without a hearing if the moving papers fail to allege either a ground constituting legal basis for the motion or sufficient facts to support the ground advanced (CPL 440.30 [4]). Only if the court does not determine the motion pursuant to CPL 440.30 (2), (3) or (4) must it conduct a hearing (CPL 440.30 [5]).

With these principles in mind, we turn to the individual claims raised by defendant's motion.

### PATE VIOLATION

■ As a first ground for vacatur, defendant argued at nisi prius and renews the argument before this court, that "notwithstanding the substantial evidence that [she] was unable to rationally comprehend and participate in the proceedings, the [Trial] [J]udge failed to order an examination of her competency to stand trial" in derogation of her constitutional rights. As noted, the County Court rejected this argument, ruling, *inter alia,* that this claim, while not raised on appeal, could have been and that "consideration is or should be precluded by the procedural bars of section 440.10 (2) (c) and (3) (a) of the Criminal Procedure Law". We do not agree that this claim should have been rejected on procedural grounds.

It has long been accepted, and indeed the Supreme Court has recognized as a matter of Federal due process, that an accused lacking competence may not be subjected to a trial (see, *Bishop v United States,* 350 US 961; 4 Blackstone's Commentaries, at 34; Note, *Incompetency to Stand Trial,* 81 Harv L Rev 455). In order to safeguard this substantive right that an accused have " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " and " 'a rational as well as factual understanding of the proceedings against him' "

(*Dusky v United States,* 362 US 402), the Supreme Court announced in *Pate v Robinson* (383 US 375) a separate procedural due process right to a competency hearing whenever the facts or events presented to the trial court raise a bona fide doubt as to a defendant's competency.[1] Failure by the trial court to conduct such a hearing — the only claim defendant raises here — may constitute a denial of the right to a fair trial that could invalidate the conviction (*see, Pate v Robinson, supra; Lokos v Capps,* 625 F2d 1258; *Pedrero v Wainwright,* 590 F2d 1383 [Wisdom, J.], *cert denied* 444 US 943).

In determining whether a trial court did deny due process in refusing a hearing, the proper focus, as *Pate* and its progeny teach, is on what the court did in light of what it then knew of the defendant (*Pate v Robinson, supra,* at p 385; *see, e.g., Drope v Missouri,* 420 US 162, 176-177; *Hance v Zant,* 696 F2d 940, 948, *cert denied* 463 US 1210; *Reese v Wainwright,* 600 F2d 1085, 1093, *cert denied* 444 US 983; *Nathaniel v Estelle,* 493 F2d 794, 797). As the Fifth Circuit has stated, the test to be applied is an objective one: Did the Trial Judge receive information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense? (*See, Lokos v Capps,* 625 F2d 1258, 1261, *supra; Pedrero v Wainwright,* 590 F2d 1383, 1388, *cert denied* 444 US 943, *supra.*)

Turning to defendant's *Pate* claim and the statutory bar issue, it bears reemphasizing that for a court to apply the procedural bar of CPL 440.10 (2) (c), two conditions must be met: (1) "sufficient facts [must] appear on the record * * * to have permitted, upon appeal from [the] judgment, adequate review of the ground or issue raised upon the motion", and (2) no review occurred "owing to the defendant's unjustifiable failure" to perfect an appeal or raise the issue on appeal.

An examination of the trial transcript discloses four instances when the Trial Judge received specific information pertaining to defendant's mental state. On December 10, 1980, the 12th day of trial, for instance, defendant's attorney informed the court that he was waiving his client's presence at a robing room conference

---

1. That standard derived from the Illinois statute at issue in *Pate v Robinson* (383 US 375). The Supreme Court later stated in *Drope v Missouri* (420 US 162, 172): "The Court did not hold that the procedure prescribed by Ill. Rev. Stat., c. 38, § 104-2 (1963), was constitutionally mandated, although central to its discussion was the conclusion that the statutory procedure, if followed, was constitutionally adequate."

because she had difficulty enduring the proceedings in a nondisruptive manner and he "had to rush the psychiatrists to her several evenings". Additionally, on January 6, 1981, when defendant started to cry as a witness left the stand, the Trial Judge declared a recess because he "didn't know whether she was going to break down". Again, on January 20, 1981, the 23rd day of trial, defendant's attorney informed the court in a robing room conference that his client was "teetering on the brink of losing her ability to be unhospitalized by the series of untoward events that have occurred in this case. She does not understand it. She is not capable of dealing with it emotionally". Then, on January 30, 1981, with regard to the so-called "Scarsdale Letter", sent by defendant to the deceased the very day of the latter's death, defense counsel informed the court that defendant's psychiatrist "believes that if [defendant] is not reassured that the letter is not going to be made public as distinguished from showing it to the jury and [the prosecutor's] using it on cross-examination, [she] may be seriously impaired, even to the point of returning to a state of suicidal depression".

Concededly, these incidents show that defendant was distressed by her situation and understandably overwrought. By the same token, however, they reveal that defendant was bearing up under a difficult situation. During the December 10, 1980 incident referred to above, for instance, defense counsel assured the court that defendant's condition "has not been any problem up to now". Moreover, as respects the January 6, 1981 incident, defendant denied to the Judge that she was going to break down and cry and went on to state in light of the court's admonition not to kiss the witnesses as they came off the stand: "I wish I could be told the rest of the things I am supposed to know, and I am trying very hard not to cry, Judge. I don't think I have cried that much". Furthermore, for all the speculations as to hospitalization and suicidal depression, nothing resembling those dire speculations ever came to pass. In any event, by no stretch of the imagination could these isolated incidents be interpreted as evincing incapacity on defendant's part to consult with her lawyer with a reasonable degree of rational understanding and with a rational as well as factual understanding of the proceedings against her (see, People v Picozzi, 106 AD2d 413, lv denied [Apr. 9, 1985]). If this is all the evidence the Trial Judge had of any alleged infirmity, he would not have violated any requirement under Pate by foregoing further inquiry. Thus, these isolated incidents of record would not have constituted a sufficient factual predicate for defendant to raise this issue on appeal with any semblance of merit. Accordingly, the County Court

should not have applied the procedural bar encompassed in CPL 440.10 (2) (c).[2]

Nor should the County Court have, in its discretion, invoked CPL 440.10 (3) (a), that bars consideration where, prior to sentence, a defendant could have "with due diligence" placed facts "on the record in a manner providing adequate basis for [appellate] review". Contrary to the People's assertion, this defendant, prior to sentence, could not have supplied a requisite factual predicate for her claim by way of a CPL 330.30 motion. CPL 330.30 sets forth three grounds for setting aside a verdict before sentencing: (1) any ground *appearing in the record which,* if raised on appeal, would require reversal or modification as a matter of law, (2) juror misconduct, or (3) new evidence which *would have resulted in a more favorable verdict to the defendant.* Quite obviously, none of these grounds embraces the trial court's duty to issue an order of examination. In any event, whatever the limits of defendant's competency claim, if, as she alleges, she remained mentally impaired well through sentencing, she was in no position to avail herself of this procedure.

Furthermore, there is an additional reason why the County Court, in its discretion, should not have invoked CPL 440.10 (3). So bound up with the notion of a fair trial is this *Pate* procedural right that the Supreme Court has held that a defendant cannot waive it by failing to demand a competency determination, noting that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial" (*Pate v Robinson,* 383 US 375, 384, *supra*). Our Court of Appeals, "tak[ing] cognizance of the principles enunciated in *Pate v Robinson* (*supra*)", has stated that "the issue of competency to stand trial may be raised on appeal despite the absence of any objection to the trial court's failure to cause the defendant to be

---

**2.** It is true that prior to sentencing the court received a probation report which revealed that for 10 years defendant had been taking Desoxyn, a methamphetamine prescribed by Dr. Tarnower; that she had received Librium during her stay at the Westchester County Jail; and that she was then receiving antidepressants. Whether this information would at all be relevant to defendant's *Pate* claim is unclear. As the Fifth Circuit noted: "A *Pate* violation is usually thought of as an error committed by the trial court during the course of the trial. It *may be,* however, that a *Pate* violation could also occur shortly after trial as when the trial judge is considering a motion for a new trial or, as here, when the judge is deciding whether to grant a transfer motion" (*Zapata v Estelle,* 588 F2d 1017, 1020, n 2 [emphasis supplied]). In any event, even were this evidence available for direct appeal, this, added to the other incidents related above, would not afford a sufficient factual predicate. This is especially true since the probation report quotes defendant as saying that she did "not feel that she suffered any ill effects from this medication".

examined" (*People v Armlin,* 37 NY2d 167, 172; *see also, People v Bangert,* 22 NY2d 799). Fleshing out this nonwaiver principle, sundry Federal decisions have held that collateral attack of a judgment on a *Pate* violation will not be barred simply because the defendant failed to voice an objection at trial or even to raise the issue on appeal (*see, Silverstein v Henderson,* 706 F2d 361, *cert denied* 464 US 864 [when a trial court neglects its duty to conduct a hearing on competence, defendant's failure to object or take an appeal on the issue will not bar collateral attack]; *Zapata v Estelle,* 588 F2d 1017; *Nathaniel v Estelle,* 493 F2d 794, 797, *supra* [habeas corpus available to contest absence of determination of competence although issue not raised at trial]; *United States ex rel. Roth v Zelker,* 455 F2d 1105, *cert denied* 408 US 927 [habeas corpus not barred by failure to raise issue on direct appeal]; *Hayes v United States,* 468 F Supp 179, 184 [coram nobis alleging no competency hearing not barred by failure to previously raise issue]). The logic of these cases pertains with equal force at bar.

Turning, then, to the merits of the *Pate* claim, defendant's moving papers disclose at least three other pieces of information about her condition communicated to the Trial Judge, which do not appear on the record. In his affidavit, for instance, Dr. Abraham Halpern, defendant's treating physician, averred that in a conference with the court on January 20, 1981 he proposed that defendant be hospitalized and escorted to trial every day, fearing that "if certain information was provided to the press * * * she might act out suicidally when alone". Furthermore, Dr. Halpern averred that at defense counsel's suggestion he wrote a letter to the Trial Judge, opining that "divulging the contents of the 'Scarsdale Letter' directly to the press and news media will have the effect of throwing [his] patient into a state of such serious mental disability as to render her incapable of continuing with the trial and may, as well, require her immediate psychiatric hospitalization to avert an act of suicide". Finally, Dr. Halpern annexed to his affidavit a copy of a psychological evaluation prepared by Dr. Eileen Bloomingdale and alluded to in defendant's probation report.

Even giving defendant the benefit of any doubt arising from this information, such information hardly adds anything to the proffered *Pate* claim. In the first place, we cannot even be sure that the Trial Judge saw the Bloomingdale report or Dr. Halpern's letter, the author of the letter himself admitting that counsel "took the letter to deliver to Judge Leggett [, and] I do not know whether the Judge saw [it]". Hence, these documents would be completely irrelevant to defendant's *Pate* claim (*see,*

*e.g., Pate v Robinson,* 383 US 375, 385, *supra; Lokos v Capps,* 625 F2d 1258, 1261, *supra).* In the second place, even assuming, arguendo, that all this additional information were relevant to the instant claim, it adds nothing significantly new to what the Trial Judge knew, as evidenced by the trial record. The record reveals, as discussed, *supra,* that the court was aware of defendant's alleged suicidal depression, her feelings toward the "Scarsdale Letter", and the essential features of the Bloomingdale report as alluded to in the probation report. In the last place, also discussed, *supra,* whatever this information revealed about defendant, no great tragedy eventuated and the information does not necessarily belie her capacity to participate in her trial defense.

Each *Pate* claim must, of course, be decided on its own facts; no two cases are alike. But when we do compare this with those involving *Pate* violations, we are well convinced that no denial of due process occurred at bar. Unlike the cases of *Pate, Drope, Lokos* and *Nathaniel (supra),* there was no evidence before the Trial Judge that defendant had a prior history of irrational behavior or medical treatment. Moreover, to the extent that the information before the court revealed that defendant was experiencing difficulty, it did not suggest any impairment on defendant's part to cooperate in her defense — unlike the Federal cases cited above. Finally, while a defendant's demeanor cannot be relied upon to dispense with a competency examination where there are clear indications of mental illness *(see, Drope v Missouri,* 420 US 162, 179, *supra; Pate v Robinson,* 383 US 375, 385-386, *supra),* here, where there were no such indications, and where defendant took the stand and testified with clarity and wit for *eight days,* evincing complete awareness of the nature and consequences of the proceedings and impressing the Trial Judge as "a brilliant, brilliant woman", we cannot but conclude that the trial court did not err in not issuing an order directing her examination *(see, Bowden v Francis,* 733 F2d 740; *Zapata v Estelle,* 588 F2d 1017, 1021, *supra).* Indeed, while counsel's failure to raise the competency issue during trial may not bar defendant from raising it now, still we agree with courts that have found the failure to do so to be persuasive evidence that no *Pate* violation in fact occurred *(see, Reese v Wainwright,* 600 F2d 1085, 1092, *cert denied* 444 US 983, *supra; Grissom v Wainwright,* 494 F2d 30, 32; *Jackson v Caldwell,* 461 F2d 682, 693-694, *cert denied* 409 US 991).

In brief, we find no merit in this claim of defendant and that branch of her motion incorporating it must be summarily denied pursuant to CPL 440.30 (4).

### FAULTY LEGAL ADVICE

■ As a second ground for vacatur, defendant argues that trial counsel gave her faulty legal advice regarding a possible extreme emotional disturbance defense, thus depriving her of effective assistance of counsel in derogation of her constitutional rights. Again, as previously noted, the County Court rejected this argument, ruling, as an initial matter, that the claim could have been raised on appeal and was thus foreclosed by CPL 400.10 (2), (3). Once again, the County Court incorrectly applied these procedural bars to the instant case. Pointedly, the People do not now argue otherwise.

The Court of Appeals has time and time again advised that ineffective assistance of counsel is generally not demonstrable on the main record (*see, People v Brown,* 45 NY2d 852; *People v Skrynski,* 42 NY2d 218, 222; *People v Brown,* 28 NY2d 282, 286-287). Indeed, the court has stated that "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10" (*People v Brown,* 45 NY2d 852, 853-854, *supra; see also, People v Batts,* 96 AD2d 842). The instant claim of ineffective assistance, predicated entirely, as it is, upon alleged faulty legal advice given by counsel, appears to be one preeminently necessitating CPL article 440 review.

The record at trial is completely silent with regard to facts critical to defendant's claim. Obviously the trial record does not reveal any advice counsel gave defendant regarding the defense of extreme emotional disturbance — much less any faulty legal advice. Nor does the record reveal whether it was counsel or defendant herself who decided that the extreme emotional disturbance defense should not be submitted to the jury, and if defendant made that decision, whether the alleged faulty advice played any part in that determination. Thus, inasmuch as "sufficient facts [do not] appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of * * * [this] issue", the procedural bar of CPL 440.10 (2) (c) should not have been applied to defendant's claim.[3]

---

3. Even assuming, arguendo, that there were facts on the record sufficient to have permitted review of this issue on direct appeal, we still believe CPL 440.10 (2) (c) should not have been applied by the County Court since failure on the part of defendant to raise the issue would not have been "unjustifiable". In this regard, it must be noted that on defendant's appeal to this court, her trial attorney was cocounsel with the attorney who later assumed control of her appeal before the Court of Appeals. It hardly seems that trial counsel would have argued his alleged ineffectiveness before this court, and counsel

Nor was denial of defendant's motion for vacatur on this ground warranted under CPL 440.10 (3) (a). That provision of the statute specifically provides that "[t]his paragraph does not apply to a motion based upon deprivation of the right to counsel at the trial" (*see, e.g., People v Howard,* 12 NY2d 65, 67, *cert denied* 374 US 840; *People v Silverman,* 3 NY2d 200).

On the merits, however, defendant's claim must be rejected. To prevail upon a claim of ineffectiveness of counsel under the US Constitution 6th and 14th Amendments and the NY Constitution, article I, § 6, a defendant must demonstrate that (1) "in light of all the circumstances, [the advice given was] outside the wide range of professionally competent assistance" and (2) the advice "actually had an adverse effect on the defense" (*Strickland v Washington,* 466 US 668, __ 104 S Ct 2052, 2066, 2067; *see also, People v Baldi,* 54 NY2d 137; *People v Droz,* 39 NY2d 457, 462; *People v Wagner,* 104 AD2d 457). Remembering, as we must, that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" (*Strickland v Washington, supra,* at pp 2065, 2066), we find that defendant has failed to make out a requisite showing on even the first branch of the two-pronged *Strickland* test.

Note must be taken at the outset that defendant's claim of faulty legal advice is contradicted, to a certain extent, by the very papers she submits in support of the motion. For example, while defendant's present counsel assigns error to trial counsel's advice that defendant would have "to testify that she intentionally shot Dr. Tarnower in order * * * to obtain an instruction on extreme emotional disturbance", an attorney, William Riegelman, who attended strategy meetings between defendant and trial counsel, in a supporting affidavit states no such thing. What he states is that trial counsel advised defendant that "pleading the mitigating circumstances of EED [extreme emotional disturbance] by implication constituted, prima facie, an admission on her part that she did in fact intend to bodily injure or cause the death of Dr. Tarnower". Surely this advice, so stated, cannot be considered wrong — at least from a practical point of view.

Extreme emotional disturbance is an affirmative defense which a defendant must raise and prove by a preponderance of

representing defendant before the Court of Appeals would have had difficulty explaining why he did not raise the issue at the Appellate Division (*cf. People v Ferrer,* 99 AD2d 459).

the evidence (Penal Law § 25.00 [2]; § 125.25 [1] [a]). Once a defendant attempts to establish affirmatively that he deserves the benefit of this mitigating defense, a lay jury may interpret such a claim as an admission of the act presupposed in such a defense: intentional murder. A similar practical problem occurs every time a defendant raises inconsistent defenses: the law permits them but invariably juries find them suspect (*cf. People v Cintron,* 74 AD2d 457, 463). Since defendant steadfastly maintained that the shooting was accidental, it was incumbent upon trial counsel to warn defendant of the potentially damaging effect that raising the defense could have — the lay jury might view it as an admission of intentional murder and lessen her chance of acquittal (*see, Strickland v Washington, supra,* at p __, p 2061; *Tollett v Henderson,* 411 US 258, 268; *Dixon v Balkcom,* 614 F2d 1067, 1068). Hence, defense counsel's advice can in no way be faulted.

In a similar vein, present counsel faults trial counsel's advice that "psychiatric testimony was a prerequisite for [the extreme emotional disturbance] defense" and the introduction of such evidence "would necessitate a waiver of [defendant's] physician-patient privilege". But what Riegelman reports trial counsel as saying is that "in order to sustain the burden of proof required once the affirmative defense of EED [extreme emotional disturbance] had been raised, it would be necessary for the defense to introduce psychiatric testimony to support the claim of EED, and this would ultimately force [defendant] to waive her doctor-patient privilege". Again this advice, as stated, is not wrong from a practical point of view.

Concededly, psychiatric testimony would not be legally required for defendant to raise the defense (*see, People v Cruickshank,* 105 AD2d 325, 330, *lv denied* [Apr. 16, 1985]). Nonetheless, if defendant had any hope of prevailing upon the defense, she would have had to convince the jury by a preponderance of the evidence that the emotional explanation given for her conduct was a reasonable excuse (*see, People v Casassa,* 49 NY2d 668, 679, *cert denied* 449 US 842; *People v Morrison,* 95 AD2d 868). Whatever other evidence may have been available to support the defense, certainly a psychiatrist's testimony, giving objective reasons why particular conduct was triggered, would be most probative on the question, even *de rigueur,* in order to be successful, as a practical matter, with the jury. Furthermore, the law is clear that if defendant did offer psychiatric testimony in support of the proposed defense, she would be subject to psychiatric examination by the People's experts, and any written report of mental examinations relating to the defense would

be subject to disclosure pursuant to CPL 240.30 (*see, People v Segal,* 54 NY2d 58; *People v Al-Kanani,* 33 NY2d 260, *cert denied* 417 US 916; *People v Cruickshank,* 105 AD2d 325, 328-330, *supra*). Consequently, counsel's advice as to the practical necessity of psychiatric evidence and its waiver impact on the physician-patient privilege was in no way erroneous.

Finally, present counsel's claim that trial counsel believed that "extreme emotional disturbance is a lesser offense included in the offense of murder in the second degree" is totally belied by Riegelman's version of the advice offered.

In short, the advice given to defendant, as reflected in the Riegelman affidavit, was a trial attorney's practical assessment of the extreme emotional disturbance defense; and while a different strategy might appear more advantageous in hindsight, that does not in any way render the original advice deficient. The fact that the allegations of faulty advice are "unsupported by any other affidavit or evidence" and are contradicted by the affidavit of a lawyer actually present when the defense was discussed convinces us that "under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation[s] [are] true" (CPL 440.30 [4] [d]). Accordingly, this branch of defendant's motion should be summarily denied pursuant to CPL 440.30 (4) (d). It may well be true, as defendant points out, that a hearing is warranted on a coram nobis motion when a defendant has not been informed of the existence of a defense or its risks. Nonetheless, where, as here, defendant's affidavit establishes that she was indeed informed of the risks, no hearing is warranted (*see, People v Lane,* 60 NY2d 748, 751 [concurring opn of Meyer, J.]; *People v Dodson,* 79 AD2d 976).

### ABSENCE OF INQUIRY BY COURT

As a final ground for vacatur, defendant contends that the trial court deprived her of a fair trial by omitting an instruction on extreme emotional disturbance without first ascertaining whether she knew about the defense and voluntarily concurred with her attorney to waive it. The County Court likewise denied this branch of the motion on procedural grounds (CPL 440.10 [2] [c]), and we agree with this determination.

Clearly the Trial Judge was aware that a defense of extreme emotional disturbance was available to defendant. Prior to summations, the court noted, in passing: "The practical approach to this case in reality has been that the defense, had they chosen, could have by their affirmative evidence given a clear and convincing basis for a downcharge to manslaughter in the first

degree, had they offered evidence or contended that the defendant acted under extreme emotional disturbance". The fact that the Trial Judge was aware of the defense and neither instructed the jury nor made inquiry of defendant is a matter of record. Under these circumstances, it cannot be gainsaid that "sufficient facts appear on the record * * * to have permitted * * * adequate review of [this] * * * issue" (CPL 440.10 [2] [c]), and that if the Trial Judge had committed error in failing to instruct or inquire, defendant could have raised the issue on appeal. It is simply not true, as defendant contends, that facts dehors the record, such as her alleged mental impairment and alleged misadvice by counsel, were essential to her claim, thus precluding adequate review on appeal. Unlike her *Pate* claim, which involves a factual determination as to what the trial court knew of her alleged impairment (for which sufficient facts may not appear on the record), the claim here involves a strictly legal matter, namely, whether the law imposes any duty on a Judge to charge extreme emotional disturbance *sua sponte* and/or instruct or inquire of defendant with respect to that defense. Thus, the particularities of defendant's mental state or the advice given would be largely irrelevant to this claim.

Nor do we perceive any reason for this issue not being raised on appeal other than defendant's "unjustifiable failure to [do so]" (CPL 440.10 [2] [c]). It is true, as previously noted, that defendant's trial attorney was cocounsel in the intermediate appeal to this court. Nonetheless, that fact alone should not have prevented counsel from raising the instant issue on appeal. Any duty on the part of the trial court to inquire regarding waiver of the extreme emotional disturbance defense would, as defendant herself states, be independent of counsel's duties. Thus, this issue, unlike that of ineffective assistance of counsel, could be raised without in any way implicating the efficacy of counsel's performance or causing him to espouse an appellate position adverse to his own interest. Any other result here would quite literally mean that an appealing defendant could always keep open the escape hatch of a 440 motion by retaining as appellate counsel the same attorney who represented her at trial.

In brief, as the County Court noted, any failure on the Judge's part to charge the defense or conduct an allocution of defendant could have been raised on appeal in the same way as was his alleged failure to instruct the jury "that one may have two homes within the meaning of the weapons possession statute" (*People v Harris,* 84 AD2d 63, 105, *supra*). Defendant's failure to

raise the issue now bars her from raising it collaterally (CPL 440.10 [2] [c]).

Even were we to consider the merits of defendant's claim, we would reject it on two grounds.

In the first place, defendant misconstrues the nature of a Judge's duty to make an inquiry. While in accepting a guilty plea, for instance, a Judge must voir dire a defendant to ensure that she is knowingly, willingly and intelligently waiving certain constitutional rights by pleading guilty (*see, People v Harris,* 61 NY2d 9; *People v Nixon,* 21 NY2d 338, *cert denied sub nom. Robinson v New York,* 393 US 1067), the Judge is generally under no similar obligation to inquire at trial, where the full panoply of constitutional rights is guaranteed to a defendant.[4] A trial decision to forego an affirmative defense simply cannot be equated with the waiver of a constitutional right, and this court has already rejected *sub silentio* the claim that a Judge must voir dire a defendant regarding her decision to take the stand, certainly a decision with greater constitutional implications than one not to raise an affirmative defense (*People v Spurdis,* 76 AD2d 1042 [no opn], *lv denied* 51 NY2d 735). In any event, as the People point out, since defendant by her own averments "accept[ed] [counsel's] judgment" and only changed her opinion of the trial strategy after the verdict, there is no reason to think that inquiry by the court would have caused her to repudiate counsel's advice. This is particularly so since counsel presented no faulty legal advice, as discussed, *supra*, and any reference to the law by the court could only have reenforced the advice given.

In the second place, defendant misconstrues the nature of a Judge's duty to instruct the jury. Concededly, this court has reversed convictions in the interest of justice where the trial court, absent a request to do so, failed to charge justification and there was a reasonable view of the evidence to support such a defense (*see, People v Flores,* 75 AD2d 649; *People v Davis,* 74 AD2d 607; *People v Benjamin,* 47 AD2d 861). Nonetheless, the situation *sub judice* is markedly different. For one thing, the defense of extreme emotional disturbance, unlike justification, is an affirmative defense, which a defendant must ordinarily raise and prove by a preponderance of the evidence (*see,* Penal

---

4. Some limited inquiry, as the County Court observed, is permitted where a defendant's constitutional rights potentially conflict with other rights, for example, the right to effective assistance of counsel in the case of joint representation. Such inquiry, however, remains strictly limited and is meant to ensure that right (*see, People v Lloyd,* 51 NY2d 107, 111; *People v Gomberg,* 38 NY2d 307, 314).

Law § 125.25 [1] [a]; *People v Brown,* 37 AD2d 685; Sklar and Brendler, *Affirmative Defenses in Criminal Cases in New York,* NYLJ, Mar. 20, 1985, p 1, cols 3-4). Moreover, this defense, unlike that of justification, is not exculpatory but mitigating and would entail charging a lesser included offense (Penal Law § 125.25 [1] [a]; § 125.27 [2] [a]; *cf. People v Valles,* 62 NY2d 36, 38-39; *People v Walker,* 100 AD2d 220, 222, *affd* 64 NY2d 741). In regard to charging such an offense, CPL 300.50 (1) provides that the trial court may, in its discretion, submit the lesser included offense along with the greater offense "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." Subdivision (2) of that section goes on to state that "[i]n the absence of * * * a request, the court's failure to submit such offense does not constitute error". At bar, even assuming, arguendo, there was a reasonable view of the evidence supporting the extreme emotional disturbance defense and lesser offense, where defendant maintained throughout that she did not intend to commit a homicide, but, rather, it was an accident (*see, People v Adams,* 72 AD2d 156, 162, *affd* 53 NY2d 1, *cert denied* 454 US 854; *cf. People v Cintron,* 74 AD2d 457, *supra; Luck v State,* 588 SW2d 371, 374-375 [Tex Cr App], *cert denied* 446 US 944; *People v Purrazzo,* 95 Ill App 3d 886, 420 NE2d 461, 466-467, *cert denied* 455 US 948), the fact is that the trial court did not err in omitting the charge since defendant made no request for it (*see, e.g., People v Gonzalez,* 20 NY2d 289, 294, *cert denied* 390 US 971; *People v Dexter,* 49 AD2d 981, 982).

In short, the flaw in defendant's argument, as we see it, is that she would impose new and singular duties upon the Trial Judge, including interference with confidential attorney-client communications protected by statute (CPLR 4503; *see,* Richardson, Evidence § 411, at 404-405 [Prince 10th ed]). The irony, of course, is that if the Trial Judge had acted in the manner defendant now advocates, she could have sought to reverse any conviction on grounds of invading her rights and denying her a fair trial, and there would indubitably be good ground to do so (*see, People v Yut Wai Tom,* 53 NY2d 44, 54-61; *People v Budd,* 38 NY2d 988; *People v Tucker,* 89 AD2d 153; *People v Cintron,* 74 AD2d 457, 463, *supra; People v Martin,* 66 AD2d 995).

### CONCLUSION

In sum, although we do not entirely agree with the County Court's reasoning, we conclude that the court did not err in denying defendant's motion to vacate her judgment of conviction. Accordingly, the order appealed from should be affirmed.

WEINSTEIN, LAWRENCE and EIBER, JJ., concur.

Upon appeal by permission, order of the County Court, Westchester County, entered August 30, 1983, affirmed.