Milton WIGGINS, Petitioner–Appellant,

v.

Charles GREINER, Respondent–
Appellee.

No. 03–2212.

United States Court of Appeals,
Second Circuit.

May 18, 2005.

Vivian Shevitz (Jane Simkin Smith), South Salem, New York, for Appellant, of counsel.

Amy Appelbaum, Assistant District Attorney (Leonard Joblove and Victor Barall, Assistant District Attorneys), for Charles J. Hynes, Kings County District Attorney, Brooklyn, New York, for Appellee.

Present: RAGGI, WESLEY, and CUDAHY,[1] Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court, entered on March 28, 2003, denying petitioner-appellant's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is hereby AFFIRMED.

We review a district court's denial of a petition for a writ of habeas corpus *de novo*. *See Francolino v. Kuhlman,* 365 F.3d 137, 140 (2d Cir.2004); *Anderson v. Miller,* 346 F.3d 315, 324 (2d Cir.2003). But, like the district court, we may not grant relief unless the state court's adjudication of the claims raised "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see*

*Brown v. Payton,* —— U.S. ——, 125 S.Ct. 1432, 1438, 161 L.Ed.2d 334 (2005); *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The unreasonable application standard is a demanding one. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [clearly established federal law] incorrectly." *Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). Rather, the state court must have applied Supreme Court "precedents to the facts in an objectively unreasonable manner." *Brown v. Payton,* 125 S.Ct. at 1439; *see also Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (recognizing that, after AEDPA, habeas relief requires "[s]ome increment of incorrectness beyond error"). That is not this case.

In reviewing Wiggins's appellate challenges, we assume the parties' familiarity with the facts and record of proceedings in this case, which we reference only as necessary to explain our disposition.

1. *Confrontation Claim*

Wiggins submits that his 2001 New York State conviction after re-trial for second-degree murder, *see* N.Y. Penal Law § 125.25[2] (McKinney's 1999), and second-degree weapon possession, *see* N.Y. Penal Law § 265.03 (McKinney's 2000), was obtained in violation of his Sixth Amendment right to confrontation because the trial court admitted inculpatory testimony from his first trial of a no-longer available eyewitness. As Wiggins concedes, well-established Supreme Court precedent recognizes a confrontation exception for the testimonial statement of a witness who is unavailable at trial provid-

---

[1]. The Honorable Richard D. Cudahy, of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

ed the defendant had an opportunity to test the prior statement through cross-examination. *See Ohio v. Roberts,* 448 U.S. 56, 74–75, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); ·accord *Crawford v. Washington,* 541 U.S. 36, 57–58, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Nevertheless, he submits that the prosecution's failure to take actions before the second trial began to secure the eyewitness's presence at that proceeding made it objectively unreasonable under established Supreme Court precedent for the state courts to find the "unavailability" requirement of the exception satisfied. Like the district court, we must disagree.

■ Certainly, the Supreme Court has clearly ruled that a witness may not be deemed " 'unavailable' ... unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Reiterating this point in *Ohio v. Roberts,* the Court stated: "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken *prior to trial* to locate and present that witness." 448 U.S. at 74–75, 100 S.Ct. 2531 (emphasis added). Wiggins submits that the highlighted language in *Roberts* clearly establishes that prosecution efforts to locate a witness must be "undertaken prior to trial" to demonstrate good-faith. This court, however, has expressly rejected such an interpretation of the Supreme Court's ruling. *See United States v. Casamento,* 887 F.2d 1141, 1170 (2d Cir.1989) (holding witness unavailable "although the govern-

ment's effort to procure him was made after the trial began"). In *Casamento,* we explained,

the Supreme Court in *Roberts,* 448 U.S. at 74, 100 S.Ct. 2531, did use the language "efforts undertaken prior to trial" in discussing the test for determining whether the prosecution had made a good-faith effort to obtain the declarant's presence at trial. However, we do not believe the Court intended the timing of the government's effort in relation to the start of the trial to be a crucial element of the test. In its discussion of the test in *Roberts,* 448 U.S. at 74–77, 100 S.Ct. 2531, the Court focused on the *extent* of the government's effort, and nowhere indicated that it considered the *timing* of the government's effort to be of particular significance.

*Id.* (emphasis in original). In light of *Casamento,* we can hardly conclude that the state courts unreasonably applied *Roberts* in focusing on the extent, rather than the timing, of the prosecution efforts to locate the missing eyewitness.

The Supreme Court has not itself identified any particular efforts that prosecutors must undertake to locate missing witnesses. Instead, "[t]he lengths to which the prosecution must go to produce a witness ... is a question of reasonableness" in the proper context of the particular case. *Ohio v. Roberts,* 448 U.S. at 74, 100 S.Ct. 2531 (quoting *California v. Green,* 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring)).[2] While the state prosecutors might

**2.** To the extent Wiggins faults the prosecution for failing to seek a material witness warrant for the eyewitness after the first trial, we note that there is no Supreme Court precedent clearly establishing such a requirement. In *Barber v. Page,* 390 U.S. at 723–24, 88 S.Ct. 1318, the Court ruled that a witness in federal custody should not have been de-

clared unavailable in a state criminal proceeding when prosecutors had made no effort to secure his appearance through a writ of habeas corpus *ad testificandum.* But the reasonableness of a prosecutor using such routine process to secure the appearance of a person already incarcerated, *see id.* at 724, 88 S.Ct. 1318 (discussing federal policy to

well be criticized for failing to maintain contact with an eyewitness in the six months between mistrial and re-trial, or for allowing jeopardy to attach in the re-trial without confirming the witness's availability, the record makes plain that the efforts they undertook to locate the witness once trial began equaled, if not exceeded, those that the Supreme Court found sufficient in *Roberts*. Further, even if those efforts had occurred a month before trial, it remains uncertain whether they would have produced the witness. Under these circumstances, we cannot conclude that the state courts unreasonably applied clearly established Supreme Court precedent in declaring the eyewitness unavailable and in admitting his prior testimony from the first trial.

### 2. *Pre–Trial Identification Claim*

Wiggins submits that his conviction was obtained in violation of due process because the missing eyewitness's trial identification of him as the murderer was tainted by a suggestive pre-trial display of a single photograph. *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *see also Manson v. Brathwaite*, 432 U.S. 98, 111, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

Preliminarily, we observe that, despite arguably ambiguous language in the Appellate Division's opinion, *see People v. Wiggins*, 189 A.D.2d 908, 909, 593 N.Y.S.2d 62 (App.Div.1993), both parties treat Wiggins's challenge to the state trial court's suppression ruling as preserved for federal habeas review. The parties dispute, however, what standard of review applies: Wiggins contends that, because the Appellate Division did not adjudicate his claim on the merits, our review is *de novo*, and Greiner counters that, because the state trial court denied Wiggins's suppression motion on its merits, we apply AEDPA's deferential standard of review. We need not resolve this issue because, under either standard, Wiggins's claim plainly lacks merit. *See Leka v. Portuondo*, 257 F.3d 89, 97 (2d Cir.2001).

Supreme Court precedent clearly identifies "reliability" as "the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. 2243. Reliability is generally evaluated through a two-step process. First, a court determines whether the challenged identification procedure was, in fact, suggestive. If not, there is "no due process obstacle to admissibility." *Abdur Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir.2001). But if there was suggestivity, a court "must then determine whether the identification was nonetheless independently reliable." *Id.* That determination turns on an assessment of the totality of the circumstances, particularly those factors identified in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), specifically, (1) a witness's opportunity to view a criminal during the crime, (2) the witness's degree of attention, (3) the accuracy of any prior description of the criminal by the witness, (4) the level of certainty demonstrated by the witness at

---

allow prisoners to testify in state criminal proceedings pursuant to writ), hardly establishes as clearly unreasonable a prosecutor's failure to seek the incarceration of an eyewitness whom the prosecutor thinks may be hesitant to testify. Indeed, it is questionable whether the Fourth Amendment permits such a witness to be detained if his material

testimony has been memorialized in a way admissible at trial. *See United States v. Awadallah*, 349 F.3d 42, 59–60 (2d Cir.2003) (discussing provision of federal material witness statute, 18 U.S.C. § 3144, providing for release of material witnesses whose testimony can be secured by deposition).

the time of the confrontation, and (5) the length of time between the crime and the confrontation. *Accord Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. 2243; *Abdur Raheem v. Kelly,* 257 F.3d at 135 (noting that no one factor is dispositive).

█ Applying these principles to this case, we observe that this court has "consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one." *Mysholowsky v. People,* 535 F.2d 194, 197 (2d Cir.1976); *see also United States v. Thai,* 29 F.3d 785, 811 (2d Cir.1994). Although the parties vigorously dispute whether this case presents an exception because the eyewitness had identified Wiggins by name as the murderer before being shown his photograph,[3] the point merits little discussion. Even if we were to resolve the issue of suggestivity in favor of Wiggins, we could nevertheless conclude from the totality of the circumstances evidenced by both the suppression hearing and trial records that the eyewitness had a sufficient independent basis for making a reliable in-court identification. *See United States v. Canieso,* 470 F.2d 1224, 1226 (2d Cir.1972) (Friendly, J.) (noting that "settled law" permits affirmance of a suppression ruling based on evidence "adduced at trial" but "not presented at the pretrial suppression hearing"); *see also United States v. $557,933.89, More or Less, in United States Funds,* 287 F.3d 66, 83 (2d Cir.2002).

While the eyewitness was understandably frightened to find himself at the scene of a gunshot murder and attempted to flee,

the record nevertheless indicates that his opportunity to view the murderer from a distance of only fifty feet with the benefit of streetlight illumination was sufficient to afford him an independent basis for a reliable identification. *See generally United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001). Wiggins was not, after all, unknown to the eyewitness, but someone he had seen in the neighborhood two or three occasions per week over a period of seven months. *See* Wayne R. LaFave et al., *Criminal Procedure* § 7.4(c) (2d ed.1999). Moreover, the eyewitness's attention during the brief time when he "turned and looked" at the crime scene, Trial Tr. at 547–48; *see also id.* at 568, 572, was sufficiently focused to permit him to observe Wiggins's "whole body" as well as his "face," *id.* at 551. *See United States v. Wong,* 40 F.3d 1347, 1360 (2d Cir.1994) (finding that witness who had ducked under table during shooting and observed gunman for two to three seconds could make independently reliable identification); *United States v. Concepcion,* 983 F.2d 369, 378 (2d Cir.1992).

Although the witness did not provide a detailed physical description of the murderer, his independent ability to identify Wiggins was demonstrated in an even more convincing manner: he provided his name. Further, when shown the challenged photograph and again when testifying in court, the eyewitness's identification of Wiggins as one of three men involved in the murder was unequivocal. Finally, because the challenged photograph display occurred only one week after the murder,

---

3. Under New York law, a "confirmatory identification" from a single photograph does not implicate due process concerns. *See People v. Rodriguez,* 79 N.Y.2d 445, 583 N.Y.S.2d 814, 593 N.E.2d 268 (1992). Whether the challenged photo display in this case clearly qualifies as a confirmatory identification is an is-

sue of state law not relevant to our habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). We consider only whether the state courts unreasonably applied clearly established *federal* law.

there is little reason to think that it, as opposed to the eyewitness's own memory, informed his trial identification. *See Neil v. Biggers*, 409 U.S. at 201, 93 S.Ct. 375 (holding that seven-month interval between crime and show-up did not preclude finding of independently reliable identification); *United States v. Wong*, 40 F.3d at 1360 (same with respect to ten-month interval between crime and challenged line-up).

In sum, because the record in this case amply demonstrates the eyewitness's strong independent basis for making a reliable trial identification, we conclude, even on *de novo* review, that there was no "very substantial likelihood of irreparable misidentification," warranting suppression of the witness's testimony. *Manson v. Brathwaite*, 432 U.S. at 116, 97 S.Ct. 2243 (quoting *Simmons v. United States*, 390 U.S. at 384, 88 S.Ct. 967).

### 3. *Remaining Claims*

To the extent the district court certified for appellate review Wiggins's habeas challenges to the suggestivity of a show-up proceeding, the denial of counsel at that show-up, and the representation afforded by counsel both at the suppression hearing and at trial, assigned appellate counsel argues that the record is insufficiently developed on these issues and urges remand. Because we conclude that these claims can all be rejected without further record development as lacking merit, we decline to order remand.

Once again, we confront a preliminary possible procedural bar because, when Wiggins first raised these remaining claims in a collateral challenge to his conviction, *see* N.Y.Crim. P. Law § 440.10, the state court ruled, *inter alia,* that Wiggins should have presented them on direct appeal, *see People v. Wiggins*, 669 N.Y.S.2d 115, 242 A.D.2d 985 (1997) (citing

N.Y.Crim. P. Law § 440.10(2)(c)). Because some of Wiggins's complaints are based on off-the-record interactions with his former attorney, it is not clear whether the procedural ruling was, in fact, intended to be comprehensive. *See Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir.2003) (noting that "New York courts have held that some ineffective assistance claims are 'not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record" (quoting *People v. Harris*, 109 A.D.2d 351, 360, 491 N.Y.S.2d 678, 687 (1985) (collecting cases))). Here again, however, the point makes no difference to our conclusion that no remand is warranted in this case and that the claims can be rejected for lack of merit.

■ Focusing first on Wiggins's claims that a police detective told him that witnesses were going to view him through a one-way mirror and that he was denied an attorney during this show-up, these arguments are necessarily defeated by the trial court's express finding that the only pretrial identification procedures pertaining to trial witnesses were the single photo displays to the murder eyewitness and the victim's uncle. This factual finding is entitled to a "presumption of correctness" on federal habeas review that Wiggins must rebut by "clear and convincing evidence." 18 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005). Even if Wiggins were to testify on remand that the detective told him there was such a showing, he could not overcome this presumption, especially in light of the detective's own testimony that no identification procedures other than the photo displays occurred and the lack of any trial testimony to the contrary by identifying witnesses. Indeed, even if Wiggins had so testified at the suppression hearing and

been believed, that would, at most, have established a second suggestive procedure; it would not have altered the fact that, regardless, the testifying witnesses had independent bases for making reliable in-court identifications.[4] Accordingly, there is no need to remand Wiggins's due process claim or his related Sixth Amendment ineffective assistance claim as they pertain to the suppression hearing. The claims were properly rejected as without merit.

Similarly, no remand is necessary to resolve Wiggins's claim that counsel was constitutionally ineffective at his second trial for failing to advise the state court that he wished to testify.[5] To secure habeas relief on a claim of ineffective assistance, a petitioner must satisfy both prongs of the strict test identified in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694, 104 S.Ct. 2052.

■ Assuming *arguendo* that Wiggins could satisfy the first *Strickland* prong, by (a) convincingly demonstrating that he had alerted counsel to his desire to testify,[6] and (b) establishing that, in 1991, it was objectively unreasonable for counsel not to have understood her obligation to honor Wiggins's request to take the stand, no matter how foolhardy,[7] we would nevertheless

---

**4.** For the reasons explained *supra,* the eyewitness's identification was independently reliable. The same is true of the victim's uncle's identification. The latter identified Wiggins as one of two persons who assaulted his deceased nephew the night of his death, and he had an even greater opportunity to view Wiggins than the eyewitness. The record indicates that the uncle's attention was focused on Wiggins and his confederate during the violent encounter (indeed, he witnessed the assault from a few feet away and later reported it to the police), that he identified Wiggins by name, was unhesitating in his photo and trial identifications of Wiggins, knew Wiggins from the neighborhood, and made his identification within two days of the crime. He also identified Wiggins as one of three persons carrying guns in the brief period between the assault and subsequent murder of his nephew.

**5.** Although Wiggins told the district court that counsel never advised him of his right to testify, this assertion, which he subsequently withdrew, is, in fact, belied by his § 440.10 submission to the state court, in which Wiggins specifically alleges that, after the mistrial, he advised counsel that he wanted to testify at the re-trial.

**6.** As the district court observed after a careful review of the record and hearing directly from Wiggins, the claim strains belief. While we would normally defer to a district court's credibility finding after an evidentiary hear-

ing, to do so in this case would require us to address Wiggins's claim that counsel should have been appointed to represent him at the proceeding before the district court. *See* Rule 8(c) of Rules Governing Habeas Corpus Cases Under Section 2254, Adv. Comm. Notes on 1976 Amends.; *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir.1986). Because Wiggins's Sixth Amendment challenge fails, in any event, at the second level of *Strickland* analysis, we do not here address whether the proceedings before the district court triggered Rule 8(c).

**7.** Counsel's conduct must be objectively unreasonable in light of then-established law. *See Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *accord Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir.2001). We note that it was not until 1997—six years after Wiggins's trial—that this court clearly ruled that "the decision whether to testify belongs to the defendant and may not be made for him by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir.1997). Moreover, as *Brown* observed, although support for this conclusion can be found in the Supreme Court's 1987 decision in *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), "*Rock* itself did not settle this issue." 124 F.3d at 78; *see also Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (recognizing in dictum that defendant's right to testify falls into the category of personal rights).

conclude, without need for remand, that the state court did not unreasonably reject Wiggins's Sixth Amendment claim at the second prejudice prong of *Strickland* analysis. *See generally Brown v. Artuz,* 124 F.3d 73 (2d Cir.1997) (affirming habeas denial where petitioner could not show prejudice by purported failure of trial counsel to inform him of his right to testify); *accord Rega v. United States,* 263 F.3d 18 (2d Cir.2001) (reversing grant of writ because defendant could not show prejudice from attorney's preventing him from testifying on his own behalf).

Indeed, in support of his § 440.10 motion, Wiggins made no attempt to demonstrate actual prejudice. He asserted simply that he "requested that his counsel advise the [trial court] that he would be testifying based upon the false testimony of Mr. Jeanite [the eyewitness to the murder]." This conclusory statement, which totally fails to specify what parts of the eyewitness's testimony Wiggins submitted were false, much less what contrary testimony Wiggins would have given or why the jury was more likely to believe him,[8] is insufficient to establish the necessary "reasonable probability" that Wiggins's testimony "would have altered the outcome of the trial." *Rega v. United States,* 263 F.3d at 21.

The issue before us now is not whether Wiggins could, on remand and with the benefit of counsel, make a fuller presentation of prejudice to a federal court. The issue is whether he made a sufficient showing of prejudice in the state court to render its rejection of his Sixth Amendment claim objectively unreasonable. Because we conclude that he did not, we deny his request to remand this case and reject this claim on the merits.

For the reasons stated, the district court's March 28, 2003 judgment denying petitioner-appellant's petition for a writ of habeas corpus is hereby AFFIRMED.

---

8. Not insignificantly, the eyewitness's identification of the men who participated in the charged murder was corroborated by the victim's uncle's identification of the men who assaulted the victim earlier in the evening. Additionally, as Wiggins conceded below, his criminal record rendered him vulnerable to impeachment if he took the stand.