THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY ROGERS, Appellant.

First Department, May 9, 1991

---

**APPEARANCES OF COUNSEL**

*Ronald Cohen* for appellant.

*Jerry Rogers,* appellant *pro se.*

*Mary C. Farrington* of counsel *(James M. McGuire* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

Milonas, J.

Defendant herein was indicted for two counts of murder in the second degree alleging separate theories of culpability (intentional and depraved indifference pursuant to Penal Law § 125.25 [1], [2], respectively), as well as criminal possession of a weapon in the third degree, arising out of the homicide of Edna Williams with whom he had been residing at 80 St. Nicholas Avenue in Manhattan.

In the early morning hours of May 7, 1987, defendant was in the company of his friend, James Long, on St. Nicholas Avenue. Defendant was displaying a .22 caliber revolver, and Long advised him to put the gun away. While the two men walked to a store, defendant mentioned purchasing cocaine. They bought a quart of beer and then proceeded to defendant's apartment where Williams was asleep. The men sat and talked at the kitchen table for a time, eating and drinking beer. At some point, defendant went to the bathroom and returned, cursing and apparently angry. He approached Williams' bed and, as Long watched, began hitting her. He thereupon pulled out his gun and shot her. Long took the weapon away from him and fled the premises. A witness, Ellen Marie Green, who had noticed defendant and Long together before they entered the building, observed Long running out, shoving a gun into his pants. Green went up to defendant's apartment and saw Williams on the bed, bleeding. She hurried upstairs to tell her husband to contact the police, and, after she came back, defendant departed carrying a paper bag in his hand. The police arrived and called for an ambulance but all efforts to resuscitate Williams failed.

The police subsequently recovered the revolver inside a paper bag in a garbage can at West 111th Street and Lenox Avenue where it had evidently been discarded by a friend of Long's sister. Following defendant's arrest later that morning, he was removed to the 28th Precinct. He was read his *Miranda* rights by one of the detectives. Defendant thereafter asserted that his gun had somehow gotten on the floor beside Williams' bed, and when he reached to retrieve it, Williams

awoke and attempted to grab it, causing it to discharge. Prior to trial, he unsuccessfully moved to suppress his statement. Although defendant was eventually acquitted of the murder charges, the jury convicted him of first and second degree manslaughter and criminal possession of a weapon in the third degree.

Notwithstanding that the evidence of defendant's guilt is overwhelming, a reversal is required under the authority of *People v Gallagher* (69 NY2d 525) wherein the Court of Appeals held that "[w]here a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative" *(supra,* at 528; *see also, People v Robinson,* 145 AD2d 184). According to the court in *People v Gallagher (supra,* at 529): "One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result (Penal Law § 15.05 [1])—cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur (Penal Law § 15.05 [3]). The act is either intended or not intended; it cannot simultaneously be both. Thus, where the shooting (the act) and the death (the result) are the same, a defendant cannot be convicted twice for the murder, once for acting 'intentionally' and once for acting 'recklessly' *(see, People v Brown,* 32 AD2d 760, *affd without opn* 27 NY2d 499)."

In *People v Finkelstein* (144 AD2d 250) this court, citing *People v Gallagher (supra),* specifically determined that a person "who acts intentionally in causing the death of a person (manslaughter in the first degree [Penal Law § 125.20 (1)]) cannot at the same time act recklessly in causing the same death (manslaughter in the second degree [Penal Law § 125.15 (1)] * * *)" *(supra,* 144 AD2d, at 250). However, since the verdict involved in *People v Finkelstein (supra)* was the product of a nonjury trial, the court simply reversed the conviction for second degree manslaughter and vacated the sentence thereon, an option that the Court of Appeals expressly precluded in *People v Gallagher (supra)* where a jury verdict is involved. The People, acknowledging the mandate of *People v Gallagher (supra)* attempt to distinguish the situation in that case from the instant one by urging that the intentional and depraved indifference murder charges were submitted to the jury in the alternative. At best, the court's instruc-

tion to the jury was obscure. Yet, as the trial transcript reveals, the panel was directed to return for further deliberations on the second count of the indictment even after they had rendered a guilty verdict of first degree manslaughter under the first count. At one point in his charge, the Trial Judge appeared to suggest that the jury proceed to the second count only if it found defendant not guilty on the first count. Shortly thereafter, however, he advised the jury that "[w]hether or not you find him guilty or not guilty of manslaughter in the second degree [under the first count]—if it comes to that—[y]ou see, you'll go on to consider whether or not defendant is guilty of murder in the second degree under the second count of the indictment".

It should be noted that the District Attorney made a valiant and ultimately futile effort to persuade the court to deliver a correct charge. The defense attorney, while occasionally objecting to portions of the Judge's instructions, generally contributed to the confusion. Nonetheless, an examination of the trial transcript demonstrates that he did not waive defendant's right to raise the inconsistency of the verdict as an issue on appeal; indeed, he repeatedly complained about exactly that matter. The jury was, of course, thoroughly bewildered by all of this. Therefore, the following sequence is recorded in the minutes: The jury, having retired to deliberate, requested a rereading of the instructions. Its members were brought back to the courtroom where they again heard the jury charge. The panel then departed, and the court commented to the respective counsel:

"I would like some input from the attorneys. I'm more or less willing to leave it alone or I can tell the jurors something to the effect that if they find under the first count defendant is guilty of murder in the second degree, they stop right there and do not consider any of the lesser included offenses under the first count. And they don't consider any of the charges set forth in the second count, but they go on to consider whether or not the defendant is guilty of criminal possession of a weapon in the third degree; or not.

"I can just leave it alone, whatever you say or whatever you think."

Defendant's lawyer remarked that he would leave it alone. The prosecutor, having failed to convince the court to direct the jury to proceed by reflecting upon, first, second degree murder under the first count (intentional murder); second,

second degree murder under the second count (depraved indifference); third, first degree manslaughter as a lesser included offense under the first count; and fourth, manslaughter in the second degree as a lesser included offense under the second count, also stated that "[a]t this point, I would leave it alone." Defense counsel, who had originally requested that the Judge submit to the jury second degree murder under the first count, first degree manslaughter under the first count, second degree manslaughter (illogically) under the first count (in this order) and that the second count only be considered in the event that no verdict was reached in connection with the first count, seemed to prefer the court's original charge to that proposed by the prosecution. The Judge, significantly, made reference to *People v Moloi* (135 AD2d 576), a case in which the Second Department sustained a conviction for both assault in the first degree and reckless endangerment in the first degree as not being inconsistent, in support of the proposition that defendant herein could simultaneously be found guilty of intentional and reckless homicide and that the jury could consider both counts, in turn, rather than in the alternative. Yet, to the extent that the ruling in *People v Moloi* is irreconcilable with that in *People v Gallagher (supra),* it may not be used to avoid the consequences of the Court of Appeals decision. At any rate, the Second Department subsequently and more undisputably adhered to *People v Gallagher (supra) (see, People v O'Toole,* 138 AD2d 639).

The jury announced that it had arrived at a verdict. The foreperson, in response to the clerk's query as to its finding under count one, murder in the second degree, declared "guilty", and other jurors began protesting, "No, no." The panel was conducted out of the courtroom so that it could "get yourselves together". When it returned, the foreperson again asserted that the jury had agreed on a verdict.

"THE CLERK: As to count one, murder in the second degree, how does the jury find, guilty or not guilty?

"FORELADY: Not guilty.

"THE CLERK: As to manslaughter in the first degree, how does the jury find, guilty or not guilty?

"FORELADY: Guilty.

"THE CLERK: As to count two, murder in the second degree, how does the jury find, guilty or not guilty?

"FORELADY: Not guilty.

"THE CLERK: As to manslaughter in the second degree, how does the jury find, guilty or not guilty?

"FORELADY: Not guilty.

"THE CLERK: As to count three, criminal possession of a weapon—

"JUROR 8: There is a misunderstanding.

"THE COURT: Let the record reflect the jurors are calling out that there is a misunderstanding. I'm going to ask them to retire once again to the jury room to review what their verdict is".

Once more, the jurors exited only to deliver a note to the court that "we have been under the impression that when we reached a guilty verdict, we would go no further as charged. It seems that now we need to enter a verdict on each count individually. Please clarify." The Assistant District Attorney commented that "[i]t's my position they should not render a verdict; that if they found the defendant guilty of manslaughter in the first degree, then that means they found he committed an intentional act—if they were to render a verdict of guilty of manslaughter in the second degree under the second count, those verdicts would be inconsistent, insofar as I am concerned." The defendant's lawyer offered that the jury "were charged to render a verdict with respect to murder in the second degree, man-one, murder two, man-two, and the weapons charge. It would appear they didn't understand the charge." The Judge disagreed, and defense counsel replied that in that case, the only thing was to permit the jury to continue to deliberate on the manslaughter two charge under the second count, as well as the weapons count "because that's all that's left". The court then proposed that he direct the panel "to continue to deliberate the charge, the lesser included offense of manslaughter in the second degree under the second count and to deliberate regarding the guilt or non-guilt of the defendant as to the third count." Defendant's attorney observed that "[t]hat's how they were orginally instructed, Judge, and I would suggest that they do that." The People did not object, so the jury was recalled and were instructed that:

"At this point, you are to deliberate to see if you can reach a verdict as to the lesser included offense of manslaughter in the second degree under the second count. You will also consider under the third count whether the defendant is guilty of criminal possession of a weapon in the third degree.

"There are two items left. The first item is the lesser

included offense of manslaughter in the second degree under the second count—excuse me—where is the verdict sheet, and under the third count, criminal possession of a weapon in the third degree. I direct your attention. Collectively, albeit most respectfully to those two offenses: one listed on the second count, manslaughter in the second degree; and the only charge set forth under the third count which is criminal possession of a weapon in the third degree."

The panel again retired. Some time later, it indicated that it had a verdict. The jurors were brought into the courtroom, and the clerk asked, "Madam forelady, as to the second count of the indictment charging manslaughter in the second degree, how does the jury find, guilty or not guilty?" Whereupon the foreperson stated, "Not guilty", but she answered "Guilty" with respect to the third count. Other members of the jury began to murmur in dissent, and it was evident that there was still a problem with the verdict. The panel was returned to their deliberations. For the fourth time, it claimed to have reached a verdict, and, on this occasion, it finally found defendant guilty of manslaughter in the second degree under the second count of the indictment. A polling of the panel sustained the fact that the jury members had agreed upon defendant's guilt for manslaughter in the first degree, manslaughter in the second degree and criminal possession of a weapon in the third degree.

Defendant's attorney immediately moved to set aside the two manslaughter counts as being repugnant and inconsistent. The District Attorney, therefore, implored the court to advise the jury that it had convicted defendant both of an intentional and a reckless crime, that those verdicts were inconsistent and that it should, accordingly, "go back and deliberate and decide whether you find the defendant guilty of the charge of manslaughter in the first degree or that you find the defendant guilty of manslaughter in the second degree. You may not find him guilty of both offenses." The court, however, reserved decision until after the jurors had eaten dinner. This issue was, in the meantime, the subject of additional discussion between the Judge and the respective lawyers. The District Attorney insisted that he was concerned that defendant's conviction would be reversed on appeal as a result of *People v Gallagher* (69 NY2d 525, *supra)* whereas the court cited a number of cases, including *People v Moloi* (135 AD2d 576, *supra)* as supporting, in fact compelling, the conclusion that reckless manslaughter may be a lesser included offense of

intentional murder. When the jury later reappeared, the Judge thanked and then discharged the panel.

Although the court's initial instructions to the jury contained a number of other errors, which the Judge subsequently endeavored to correct, the greatest confusion, of course, related to the disarray over the intentional/reckless murder/manslaughter dichotomy. The jury, as indicated by the number of occasions that it believed that it had come to an agreement only to have to return to deliberate, was confused but, to its credit, tried faithfully to adhere to the Judge's various instructions. The District Attorney seems to have had a grasp of the legal nuances and did all in his power to prevail upon the Judge to deliver a proper charge. Thus, it is unfortunate that the People should be penalized for mistakes made by the court and, to some extent, acquiesced in by the defense.

However, the fact remains that the court's instructions were permeated with ambiguity and confusion so that the jury was left totally perplexed. While defendant's counsel may have abetted, or at least did little to prevent the debacle that the charging process became, it is also true that he did not waive his right to assert the inconsistency of the verdict; rather, he mentioned this problem on a number of occasions, and instantly moved to set aside the two manslaughter convictions on this basis. Most importantly, whatever errors the Judge may have committed in the course of delivering his jury instructions, he still had an opportunity to salvage the situation by following the District Attorney's advice that he resubmit the case to the panel so that it could choose between manslaughter in the first degree on the first count or manslaughter in the second degree on the second count. Regrettably, the court declined to do so, thereby rendering the verdict defective and resulting in the motion to vacate by defendant's lawyer. In effect, the court's ultimate error was to fail to recognize and then to take action to rectify an inherently repugnant verdict. Accordingly, defendant is entitled to a reversal of his judgment of conviction on the manslaughter charges. Since defendant was acquitted of the two murder counts, the People must now seek a new indictment to retry him for manslaughter in the first and second degrees *(People v Mayo,* 48 NY2d 245, 253; *People v Cruz,* 126 AD2d 495, 496). The conviction for criminal possession of a weapon in the third degree should, however, be affirmed since the error in the court's jury instructions did not extend to the third count nor does it appear to have tainted the jury's verdict thereon.

Consequently, the judgment of the Supreme Court, New York County (Martin H. Rettinger, J.), rendered on April 5, 1988, convicting defendant, following a jury trial, of manslaughter in the first degree, manslaughter in the second degree and criminal possession of a weapon in the third degree and sentencing him, as a predicate violent felon, to concurrent indeterminate terms of imprisonment of from 12½ to 25 years, 7½ to 15 years and 3½ to 7 years, should be modified, on the law, to the extent of reversing the conviction on the manslaughter charges with leave to the People to re-present the manslaughter charges, and otherwise affirmed.

MURPHY, P. J., KUPFERMAN and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 5, 1988, modified, on the law, to the extent of reversing the conviction on the manslaughter charges with leave to the People to re-present the manslaughter charges, and otherwise affirmed.