OPINION OF THE COURT
Joseph G. Golia, J.
Fabian Ruiz was convicted after a jury trial of intentional murder, depraved indifference murder and criminal possession of a weapon in the second degree; his codefendant, Orlando Ortega, was convicted of manslaughter in the first degree, *758 manslaughter in the second degree, and criminal possession of a weapon in the second degree. Each defendant has moved to set aside their convictions on the grounds that such convictions constitute inconsistent verdicts.
On May 13, 1990, Fabian Ruiz, his brother Carlos Ruiz and Orlando Ortega approached their murder victim as he sat in the front seat of a parked car along with the driver and a back seat passenger. According to certain testimony adduced at trial, Carlos Ruiz wanted to exact revenge against the victim for having fired a gun at him the night before. While Orlando Ortega, gun in hand, ordered the driver out of the car, the Ruiz brothers confronted the victim. When the victim refused to get out of the car, Carlos hit him in the face with a gun. Thereupon, both Fabian and Carlos Ruiz fired shots into the car striking the victim repeatedly. (The record discloses that the victim had been shot 13 times.) As the three defendants broke off the attack and returned to their vehicle, the victim crawled out of the driver’s side of the car and onto the driver who was lying in the street.
Thereafter, as the driver held the dying victim, Carlos Ruiz returned and shot the victim once more in the head at pointblank range. According to the testimony of the driver, the victim thereupon became very still and heavy in his arms. The driver then got back into his car and left the scene. As they were driving away, the driver and the passenger in the back seat heard more gunshots. Carlos Ruiz has yet to stand trial. He has, apparently, eluded being arrested.
The defendants, citing People v Gallagher (69 NY2d 525 [1987]) and People v Robinson (75 NY2d 879 [1990]), argue that when a defendant is charged with the death of a single individual, the submission of both, the intentional murder and depraved indifference murder counts to the jury as concurrent counts and not in the alternative, constitutes reversible error. "Where there is but one shooting and one death, it follows that allowing two convictions can be no favor or benefit to the accused; it confers an unintended advantage on the prosecution, enabling the People to secure a double conviction instead of simply protecting against an empty prosecution; and it allows the jury to avoid determining the key issue of mens rea.” (People v Gallagher, supra, at 531; emphasis added.) "Thus, if the court elects to charge the two inconsistent counts, it must do so in the alternative; it may not permit the jury to find the defendant guilty of both.” (People v Gallagher, supra, at 530.)
*759 The case at bar is, however, distinguishable from Gallagher (supra) and the recent Appellate Division decision People v Rogers (166 AD2d 23 [1st Dept 1991]). In both Gallagher and Rogers, the victim was shot with a single volley of shots; while there were three distinct shootings herein. In the first shooting, several bullets entered the victim’s body as the victim was sitting in a car with other passengers. In the second shooting, the victim was shot once in the head as he lay helpless in the street cradled in the driver’s arms. And, finally, the victim was apparently shot several more times while lying alone in the street as his two acquaintances fled from the scene. The record discloses that while the victim was shot 13 times, the passengers heard only five to seven shots in the car, an additional single shot in the head and several shots as they were leaving.
Thus, while the court in Gallagher (supra) stated that the defendant could not have had two conflicting states of mind (mens rea) when he shot the victim, the facts show herein that the defendants could have had a different state of mind when they first shot wildly into an occupied car; thereafter when Carlos Ruiz shot the victim in the head at close range in an execution-like manner; and lastly, as the victim lay helplessly on the ground.
The case at bar also differs substantially from Robinson (supra). In Robinson, the victim did not die directly from the assault itself, but rather from hypothermia after being left bound in a snow-covered public park during the middle of winter. Arguably, if the victim was found in time, he could conceivably have been saved. In contrast, the victim herein died from the actual assaults themselves. The evidence permits a finding by the jury that each assault, by itself, could have resulted in the victim’s death. Thus, in Robinson the jury found no intent on the defendant’s part to cause the victim’s death, while this jury was clearly able to find that defendants, acting in concert, had intentionally murdered their victim when Carlos Ruiz shot the victim in the head.
Furthermore, it is suggested that Gallagher (supra) should not be read too broadly so as to mean that it is impossible to have both an intentional and a reckless mens rea concerning the same act. Indeed, the New York State Legislature, as well as several lower courts, have determined that it is possible to act both intentionally and recklessly at the same time as long as they concern different levels of culpability.
*760 By example, the New York State Legislature in 1990, enacted statutes designed to enhance the penalties for an adult who assaults a child and thereby causes injury or death. Some of these statutes (Penal Law § 120.05 [8]; § 125.20 [4]) combine the elements of intentionally causing physical injury while simultaneously recklessly causing the higher degree of serious physical injury. Thus this crime has both an intentional as well as reckless culpable mental state contained within the same act.
One of the new crimes created by the aforementioned legislative statutes is an additional section of manslaughter in the first degree set forth below:
"§ 125.20 Manslaughter in the First Degree * * *
"4. Being eighteen years old or more and with intent to cause physical injury to a person less than eleven years old, the defendant recklessly engages in conduct which creates a grave risk of serious physical injury to such person and thereby causes the death of such person.”
Readily, we see that there are statutory examples of both mental states combining to constitute a single crime.
Consequently, the rule set forth in Gallagher (supra) does not preclude the existence of more than one state of mind concerning the same incident. A fact easily ascertainable by the fact finders in the instant case. Our courts have long held that if conviction of one charge would not necessarily negate the defendant’s guilt on the other charge, then the charges would not be "inconsistent charges”.
In People v Moloi (135 AD2d 576 [2d Dept 1987]), that court held that a defendant could be convicted of both intentional assault in the first degree and reckless assault in the first degree based on the same act. Acknowledging Gallagher (supra), it determined that "the two counts of assault in the first degree are not 'inconsistent counts’, since a conviction of one would not necessarily negate the defendant’s guilt of the other”. (People v Moloi, supra, at 577.) It reasoned that the fact "a defendant may have committed an act with the intent to seriously injure another person does not rule out the possibility that he may have also unintentionally (and recklessly) created a risk of such person’s death, since not all 'serious’ injuries are necessarily life threatening”. (People v Moloi, supra, at 577.) The real issue to be faced then is not whether the verdicts appear inconsistent on their face but *761 rather, whether or not they are in all respects mutually exclusive. I submit that in the case at hand, such verdicts are not mutually exclusive.
We must likewise consider that where two or more persons act in concert, each may be criminally responsible for the acts of the other but only to the extent of their own mens rea. (Penal Law § 20.00; People v Hardy, 34 AD2d 843.)
Active participation in the commission of a crime may provide a reasonable basis from which it can be inferred that a defendant acted with the mental culpability for the crimes charged. (People v McClary, 138 AD2d 413 [2d Dept 1988]; People v Santana, 141 AD2d 778 [2d Dept 1988]; People v Ramos, 130 AD2d 688 [2d Dept 1987]; People v Gonzalez, 143 AD2d 681 [2d Dept 1988].) The fact that the defendants may not have been intimately involved at the time "the intentional execution” is completed does not necessarily relieve them of their accessorial liability. (Penal Law § 20.00; People v Raphael, 134 AD2d 535 [2d Dept 1987]; People v Simmons, 97 AD2d 594 [3d Dept 1983].) Nor are the People required to prove that the defendants on trial fired the fatal shot. (People v Brathwaite, 63 NY2d 839 [1984].) The jury could fairly conclude from the defendant’s conduct and the surrounding circumstances that the defendant was guilty as an accessory to the execution of the victim by a point-blank shot to the head. (People v White, 162 AD2d 646 [2d Dept 1990].) While it may seem harsh to convict Mr. Ruiz of two offenses for the same crime, this harshness is tempered in that the defendant will not face any additional jail time due to concurrency. (People v Perez, 45 NY2d 204 [1978].)
Finally, neither defendant objected to the charge as it was given to the jury. Nor did the defendants object when the verdicts were read by the jury so as to allow the jury to rectify any conflict. Clearly, neither defendant has preserved this issue for review. (People v Satloff, 56 NY2d 745 [1982]; People v Stahl, 53 NY2d 1048 [1981]; People v Alfaro, 66 NY2d 985 [1985]; People v Eulo, 63 NY2d 341 [1984]; People v Smith, 144 AD2d 505 [2d Dept 1988]; People v Johnson, 160 AD2d 813 [2d Dept 1990].)
Accordingly, both defendants’ motions are denied in their entirety and the court shall proceed with sentencing both defendants.