David SWEET, Petitioner–Appellant,

v.

Floyd BENNETT, Superintendent of Elmira Correctional Institution, Respondent–Appellee.

Docket No. 02–2055.

United States Court of Appeals, Second Circuit.

Argued: June 21, 2002.

Decided: Dec. 19, 2003.

4. We have considered the other arguments in Nnebe's brief and found them meritless.

Alan F. Blakley, Blakley & Velk, Missoula, MT, for Appellant.

Sylvia Wade Josh, Assistant Attorney General, Attorney General's Office, State of New York, Rochester, NY, for Appellee.

Before: WALKER, Chief Judge, WINTER and F.I. PARKER,* Circuit Judges.

Chief Judge WALKER concurs in a separate opinion.

F.I.PARKER, Circuit Judge.**.

Petitioner-appellant David Sweet appeals from the amended judgment of the United States District Court for the Western District of New York (Jonathan W. Feldman, *Magistrate Judge*)[1] entered on January 15, 2002, denying his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Sweet's petition was based, among other things, on a claim that he received ineffective assistance of counsel because his trial counsel failed to object when: (1) the trial court's instructions to the jury charged Sweet with second degree murder, N.Y. Penal Law § 125.25[4], and first degree manslaughter, N.Y. Penal Law § 125.20[4], conjunctively rather than alternatively; and (2) Sweet was subsequently convicted of both counts by the jury.[2] The district court denied Sweet's petition because it concluded that, even though Sweet's trial counsel's failure to preserve the inconsistent verdicts claim

---

\* The Honorable Fred I. Parker, who was a member of this panel, died on August 12, 2003. Prior to his death, he participated in the consideration and decision of this case. The two remaining members of the panel decide this appeal pursuant to 2d Cir. R. § 0.14(b).

\*\* Judge Parker was the principal author of the opinion of the Court.

1. The magistrate judge (hereafter also referred to as the district court) was acting by consent of the parties pursuant to 28 U.S.C. § 636(c).

2. Sweet's counsel could have objected on inconsistency grounds both to the jury charge before it was given, and to the jury verdict after it was rendered. Although an "inconsistent charge" objection and an "inconsistent verdict" objection can involve different issues, they are often discussed interchangeably by the New York courts. *See, e.g., People v. Robinson*, 145 A.D.2d 184, 538 N.Y.S.2d 122 (4th Dep't 1989), *aff'd*, 75 N.Y.2d 879, 553 N.E.2d 1021, 554 N.Y.S.2d 473 (1990). Because the parties and the district court have discussed the issue in this case interchangeably as both one of inconsistent charges and inconsistent verdicts we do not distinguish between the two terms in our discussion of the issue.

pursuant to N.Y.Crim. Proc. Law § 300.30[5] "appears to [have been] a serious blunder," based on the state of New York law at the time of the trial, it was not objectively unreasonable for the Appellate Division to reject Sweet's ineffective assistance of counsel claim in light of the New York case law in effect at the time of the Appellate Division's decision.

Although we disagree with the approach the district court took to reach this result, for the reasons set forth herein we agree with the district court's ultimate conclusion that Sweet is not entitled to habeas relief. Accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

Sweet's incarceration stems from the tragic death of three-year-old Nina Fiser. Sweet was engaged to Nina's mother, Tammy Fiser, and the three of them lived together in Farmington, New York. Nina was in the sole care and custody of Sweet when she went into cardiac and pulmonary arrest on the afternoon of April 4, 1993. Sweet called 911, and Nina was taken to a nearby hospital. However, shortly after her arrival at the hospital Nina was pronounced dead. The medical examiner later testified that Nina's fatal injuries were consistent with "very violent blunt force" to her abdomen. Specifically, the autopsy revealed that Nina's liver and pancreas had been torn in half, and the artery that supplies blood to the stomach, spleen, and liver was "completely severed." Nina's

body evidenced numerous bruises of varying age.

On June 28, 1994, the Ontario County Grand Jury returned an indictment that charged Sweet with, among other things, second degree murder, N.Y. Penal Law § 125.25[4],[3] and first degree manslaughter, N.Y. Penal Law § 125.20[4],[4] in connection with Nina's death. On October 27, 1995, following a nine-day jury trial, Sweet was convicted on both of these counts. Sweet's trial counsel did not object to the fact that the jury charge included both of these arguably inconsistent counts. The state, on the other hand, did express concern about the possible inconsistency of the two charges, but the trial court dismissed the state's concern. Sweet's trial counsel also failed to object on the basis of inconsistency when the jury returned its guilty verdict.

In a post-trial motion, Sweet's trial counsel moved to set aside the jury verdict on the ground that Sweet's convictions were inconsistent due to the different mental states required under his statutes of conviction. The trial judge denied Sweet's post-trial motion and sentenced him to a term of imprisonment of twenty-three years to life on the second degree murder conviction and a concurrent term of imprisonment of eight years and four months to twenty-five years on the first degree manslaughter conviction.

Represented by new counsel, Sweet appealed his conviction to the Appellate Divi-

---

**3.** "A person is guilty of murder in the second degree when: ... Under circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person." N.Y. Penal Law § 125.25[4].

**4.** "A person is guilty of manslaughter in the first degree when: ... Being eighteen years old or more and with intent to cause physical injury to a person less than eleven years old, the defendant recklessly engages in conduct which creates a grave risk of serious physical injury to such person and thereby causes the death of such person." N.Y. Penal Law § 125.20[4].

sion arguing, among other things, that the trial court incorrectly charged the jury with second degree murder and first degree manslaughter in the conjunctive instead of in the alternative, and that he was deprived of effective assistance of counsel at trial, but did not assert an ineffectiveness claim on the inconsistent verdicts question. On December 30, 1996, the Appellate Division unanimously affirmed Sweet's convictions, concluding that "the representation received by [Sweet] was meaningful," and that Sweet's inconsistent verdict claim was not preserved for review. *People v. Sweet,* 234 A.D.2d 957, 652 N.Y.S.2d 577 (4th Dep't 1996). On May 2, 1997, the New York State Court of Appeals denied Sweet's application for leave to appeal. *People v. Sweet,* 89 N.Y.2d 1101, 682 N.E.2d 996, 660 N.Y.S.2d 395 (1997).

Sweet then filed a petition in the district court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sweet argued that he was entitled to habeas relief because he was denied his Sixth Amendment right to effective assistance of counsel due to a number of errors he claims his trial counsel made.[5] In assessing this claim, the district court noted that "although [Sweet] alleges various errors made by trial counsel, his most compelling argument is that he was denied his right to the effective assistance of counsel when his attorney failed to timely object to the trial judge's decision to charge depraved indifference murder ... and first degree manslaughter ... in the conjunctive." *Sweet v. Bennett,* No. 98–CV–6198, slip op. at 5 (W.D.N.Y. Jan. 14, 2002). Notably though,

in his appeal to the Appellate Division Sweet had not included his trial counsel's failure to properly preserve the inconsistent charges issue as one of the alleged errors that constituted ineffective assistance of counsel. The district court recognized this fact, but nonetheless considered the merits of Sweet's arguments on this issue. *See id.* at 13–14 n. 7 ("Although trial counsel's failure to preserve the [inconsistent charges] issue was not specifically mentioned in Sweet's appellate brief as one of the examples of inadequate representation, the Fourth Department's decision makes clear that the appellate court was aware that the trial counsel had failed to make a timely objection to ... either the court's decision to charge the murder and manslaughter counts in the conjunctive or the alleged repugnant verdicts.").

After considering the merits of Sweet's claim, the district court denied Sweet's petition. The court noted that, based on the case law in existence at the time of Sweet's convictions, Sweet's trial counsel appeared to have committed a "serious blunder" when he failed to preserve the inconsistent verdicts claim. Nonetheless, the district court concluded that the Appellate Division's decision was not objectively unreasonable because it was unclear whether Sweet suffered prejudice from this probable blunder, given the case law in existence at the time of the Appellate Division's decision. The district court then issued a Certificate of Appealability on the issue of whether Sweet was "denied his Sixth Amendment Right to effective assistance of counsel."[6]

---

**5.** Sweet also argued that his due process rights were violated and that he was denied a fair trial because he was charged with second degree murder and first degree manslaughter in the conjunctive instead of in the alternative. The district court rejected this argument. Because the Certificate of Appealability does not include this issue, we do not

address it in this appeal. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001) (holding that appellate jurisdiction is limited to the issues contained in the certificate of appealability).

**6.** In its entirety, the Certificate of Appealability certified the question of whether Sweet was

## II. DISCUSSION

█ Sweet argues that the district court erred in its analysis of the inconsistent verdicts issue, and consequently erroneously denied his habeas petition. The state takes the position that there was no error in the district court's analysis of the inconsistent verdicts issue, and further suggests that Sweet has waived this claim because he failed to raise it before the state court. We review the district court's denial of Sweet's habeas petition *de novo*. *Dixon v. Miller*, 293 F.3d 74, 78 (2d Cir. 2002).

The state points out that although Sweet argued in the state courts that his trial counsel was constitutionally deficient, he did not include his trial counsel's failure to properly preserve the inconsistent charges issue as one of the bases for the ineffective assistance claim. This argument by the state is one of exhaustion, and is coupled with an issue of whether the claim would now be procedurally barred in the state courts. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir.2001) (discussing exhaustion of remedies and procedural bars in the context of

a habeas corpus petition under 28 U.S.C. § 2254). Additionally, the Supreme Court has held that when a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claim procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Therefore we turn now to the question of whether Sweet's claim would be procedurally barred in the New York courts.

### A. *Procedural Bar Under New York Law*

█ New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record. N.Y.Crim. Proc. Law § 440.10(2)(c). The purpose of this rule "is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 67 N.Y.2d 100, 103, 491 N.E.2d 676, 678, 500 N.Y.S.2d 503, 505 (1986). New York courts have held that some ineffective assistance claims are "not demonstrable on the main record" and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record. *People v. Harris*, 109 A.D.2d 351, 360, 491 N.Y.S.2d 678, 687 (2d Dep't 1985) (collecting cases); *see also People v. Brown*, 45 N.Y.2d 852, 382 N.E.2d 1149, 410 N.Y.S.2d 287 (1978).

"denied his Sixth Amendment Right to effective assistance of counsel based on several deficiencies in his trial counsel's performance." In his appeal to this Court, however, Sweet only raises a single ineffective assistance of counsel claim, premised on his trial counsel's failure to object when the trial court charged the jury with second degree murder and first degree manslaughter in the conjunctive, rather than in the alternative.

However, the alleged error that is the basis for Sweet's ineffectiveness claim was particularly well-established in the trial record. Trial counsel plainly failed to object on inconsistency grounds to charging the counts in the conjunctive. Sweet has not offered a reason, and we see none, suggesting that appellate counsel would have needed a new evidentiary hearing to develop this claim. Sweet chose to bring his other ineffective assistance of counsel claims on direct appeal, so he cannot claim that he was consolidating all of his Sixth Amendment claims for one collateral attack with the benefit of a new evidentiary record for those other claims.

Moreover, we have held in a case similar to Sweet's, where the trial record provided a sufficient basis for the ineffective assistance claim on trial counsel's failure to object to a jury charge, that such a claim did not fall within any of the exceptions noted by the New York courts. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997). More recently, in reviewing a habeas petition claiming ineffective assistance for failing to object on double jeopardy grounds, we again ruled that § 440.10(2)(c) barred such a collateral attack when the defendant unjustifiably failed to raise the ineffective assistance issue on direct appeal. *Aparicio*, 269 F.3d at 91.

Thus we conclude that Sweet's appellate counsel unjustifiably failed to argue this ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c). Accordingly, Sweet's claim is procedurally defaulted for the purposes of federal habeas review as well.

### B. *The Supreme Court's Recent Decision in Massaro v. United States Does Not Change This Result*

We note that there is nothing in *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), that disturbs this conclusion. In *Massaro*, the appellant challenged the validity of this Court's decision in *Billy–Eko v. United States*, 8 F.3d 111 (2d Cir.1993), where we held that when a habeas petitioner pursuant to § 2255 is represented by new counsel on appeal and the ineffective assistance claim is based solely on the record made at trial, the claim must be made on direct appeal; otherwise, the defendant has procedurally defaulted the claim. The Supreme Court abrogated this rule and held that in § 2255 petitions there is no procedural default for failure to raise an ineffective assistance claim on direct appeal. *Massaro*, 123 S.Ct. at 1694–95.

However, *Massaro* is not a constitutional decision, and by its own language it did not extend its rule beyond § 2255. *See, e.g., id.* at 1696 ("We do hold that failure to raise an ineffective assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding *under § 2255*." (emphasis added)). Section 2254, unlike § 2255, contains an exhaustion rule, 28 U.S.C. § 2254(b)(1)(A), as well as a rule requiring deference to state courts, 28 U.S.C. § 2254(d), underscoring the necessity that defendants raise their claims in state courts first. *Massaro* does not address the concerns of comity and federalism, essential to § 2254 and the independent and adequate state ground doctrine. As the Supreme Court explained in *Coleman:*

> In the [§ 2254] habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners

whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Coleman,* 501 U.S. at 730–31, 111 S.Ct. 2546. Nothing in *Massaro* alters our view that it remains inappropriate and inefficient to allow state defendants to bypass state courts on the substance of state rules, and bring federal habeas challenges without the benefit of state decisions on those state rules. Sweet's case demonstrates the appropriateness of requiring that state prisoners bring complicated state law issues to state courts first, so that the states, rather than the federal courts, can address and resolve those complexities.

In support of its decision in the § 2255 context, *Massaro* explained that "[t]he procedural default rule is neither statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." 123 S.Ct. at 1693. As distinct from the situation in *Massaro* and viewing this matter through the lens of § 2254, Sweet's claim is barred by an independent and adequate state ground, a default rule established by New York statute, and not court-created doctrine. *See* N.Y.Crim. Proc. Law § 440.10(2)(c). The application of *Massaro* to this case would allow a § 2254 petitioner to circumvent and thus disrespect the New York legislature's choice to conserve judicial resources,

subverting the values of comity and federalism embraced by *Coleman.*

We note that Sweet's ineffectiveness claim presents almost a paradigmatic example of a trial record that plainly establishes the basis for an argument that counsel's performance was deficient and prejudicial. Counsel's failure to object is preserved in the trial record, and the issue of prejudice is a purely legal question of interpreting New York precedents. We do not see how the defendant's claim could have benefitted further from separate fact finding in a § 440 hearing. New York is free to adopt a rule allowing defendants with multiple ineffectiveness claims to consolidate them for a § 440 motion, even when some of those claims were sufficiently developed for direct appeal. However, we know of no such rule in New York, and, as we noted above, Sweet chose to bring other ineffective assistance claims on his direct state appeal. *Sweet,* 652 N.Y.S.2d at 577.

### C. *Actual Innocence*

■ The conclusion that Sweet's claim is procedurally defaulted does not end our analysis. A habeas petitioner may avoid such a default as this by showing cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.,* the petitioner is actually innocent. *See Coleman,* 501 U.S. at 748, 111 S.Ct. 2546; *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Aparicio,* 269 F.3d at 90. Sweet does not argue cause and prejudice, nor do we see any basis in the record for such an argument.[7] Thus

---

7. The only potential claim for cause for default that we see would be appellate counsel's ineffective assistance. However, the Supreme Court has held that such cause is an "independent constitutional claim" that first must be raised in state court. *Edwards v. Carpenter,* 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Thus, Sweet could not use ineffective assistance of appellate counsel as "cause" for his procedural default in this case, because Sweet has not brought a claim in state court based on the notion that his counsel in the state appellate proceedings was ineffective. In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel.

Sweet could only avoid the consequences of his procedural default on this claim if he could show that he is actually innocent.

The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321–22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (some internal citation marks omitted)).

■ Although Sweet did not explicitly make an actual innocence claim, he arguably raised this issue as part of his ineffectiveness claim. For example, Sweet argued that:

> [He] was charged with second degree murder, a crime that requires a finding beyond a reasonable doubt that he acted recklessly. He was also charged with first degree manslaughter, a charge that requires he act intentionally. The language in the indictment is identical: that his act was applying blunt force trauma to Nina, the result was the laceration of liver and spleen and, subsequently, death.... It is as though he were charged with driving his car into a telephone pole negligently and intentionally at the same time. He just can't.

Appellant's Br. at 8–9. Under this theory, Sweet had to be "actually innocent" of one of the two charges because he could not have acted both intentionally and recklessly with respect to the same result.

However, because "actual innocence" means factual innocence rather than just legal insufficiency, the question does not turn on whether Sweet's counsel could have made a successful objection to the jury charge or verdict based on New York procedural law. Instead, the question depends on whether it is more likely than not that no reasonable juror would have concluded that Sweet engaged in conduct that meets the required elements of each of the charges. *See Bousley*, 523 U.S. at 623, 118 S.Ct. 1604. Because there was evidence of multiple blows and injuries, the jury could have concluded that this evidence demonstrated a series of intentional physical injuries, culminating in one final blow that demonstrated the reckless creation of a grave risk of serious physical injury or death. The fact that Sweet was convicted of committing an act with the intent to cause physical injury to Nina does not rule out the possibility that he also unintentionally (and recklessly) created a risk of Nina's death. Thus, a reasonable juror could have concluded that Sweet committed at least one act that recklessly created a grave risk of serious physical injury[8] or death to Nina in violation of N.Y. Penal Law § 125.25[4], and committed at least one other act with an intent to cause physical injury[9] to Nina while recklessly creating a grave risk of serious physical injury

*Aparicio*, 269 F.3d at 87 n. 1 (citing *People v. Bachert*, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987)).

**8.** "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00[10].

**9.** "Physical injury" is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00[9].

to her in violation of N.Y. Penal Law § 125.20[4]. Accordingly, we need not address whether Sweet would have a meritorious actual innocence claim if both convictions had been based on the same single act, or whether Sweet's convictions were inconsistent under N.Y.Crim. Proc. Law § 300.30.[10]

## III. CONCLUSION

For the foregoing reasons, we conclude that Sweet's petition for a writ of habeas corpus was properly denied. Accordingly, we AFFIRM the judgment of the district court dismissing, with prejudice, Sweet's ineffective assistance claim based upon counsel's failure to object on the ground that the verdicts were inconsistent.

JOHN M. WALKER, Jr., Chief Judge, concurring.

I fully concur in Judge Parker's opinion dismissing, with prejudice, Sweet's § 2254 petition. I write separately with respect to the merits of Sweet's claim to highlight New York's confusing interpretation of its "inconsistent verdicts" statute.

Sweet argues that he was denied the effective assistance of counsel when his trial counsel failed to object to charging the jury with both second-degree murder and first-degree manslaughter as inconsistent. Inconsistent counts may not be charged in the conjunctive because it is not possible for a defendant to be guilty of both crimes. *See* N.Y.Crim. Proc. Law § 300.40(5); *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909, 909–10 (1987).

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."

N.Y.Crim. Proc. Law § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 559 N.Y.S.2d 962, 559 N.E.2d 656, 657–58 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617, 620 (1981)).

In *Gallagher,* the defendant, after consuming alcohol, had shot and killed the victim, and was convicted of intentional murder under N.Y. Penal Law § 125.25[1] (acting "[w]ith intent to cause the death of another person") and of reckless manslaughter under N.Y. Penal Law § 125.15[1] ("recklessly caus[ing] the death of another person"). 516 N.Y.S.2d 174, 508 N.E.2d at 910. The Court of Appeals found that Gallagher's convictions were inconsistent:

> One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result—cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur. The act is either intended or not intended; it cannot simultaneously be both. Thus, where the shooting (the act) and the death (the result) are the same, a defendant cannot be convicted twice for the murder, once for acting "intentionally" and once for acting "recklessly."

*Id.* (internal citations omitted). The intentional murder and reckless manslaughter counts, under § 125.25[1] and § 125.15[1] respectively, include elements with two necessarily inconsistent mental states re-

---

**10.** Chief Judge Walker addresses the merits of Sweet's section 330.30 claim and New York's

doctrine of inconsistent verdict in his concurrence.

garding the same specific act and result (causing death). The Court of Appeals observed that "[b]ecause the jury found defendant guilty of both intentional and reckless homicide, it is impossible to determine what if anything the jury decided on the issue of defendant's mental state at the time of the offense." *Id.* at 910–11. Applying the principle that the counts are inconsistent when "guilt of one necessarily negates guilt of the other," *id.* at 910, the court vacated the convictions on both counts.

Subsequent to *Gallagher*, New York courts applied that case and the "inconsistent verdicts" statute, N.Y.Crim. Proc. Law § 300.30[5], in line with the common sense approach taken by Judge Parker's analysis of actual innocence in the majority opinion. Consistent with the comparison of each count's elements called for in *Tucker* and *Loughlin*, the rule was that, in order for separate counts to be charged in the conjunctive, an element of one count cannot necessarily negate an element of another count. Thus, in *People v. Rogers*, 166 A.D.2d 23, 569 N.Y.S.2d 946, 947 (1st Dep't 1991), the Appellate Division held that the defendant's conviction on two counts of second-degree murder was inconsistent because one count required an "intent to cause the death of another person," § 125.25[1], while the other count required that the defendant "recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person." § 125.25[2]. The elements in each count that related to the causing of death contained conflicting mental states, and, therefore, they negated each other.

On the other hand, there is no inconsistency if the defendant acts with different mental states with regard to two different potential or intended results. The obvious example is where the defendant intention-ally beats his victim but is indifferent and reckless as to whether the victim dies. Such a defendant may be charged with both the intentional crime of assault and the reckless crime of murder. This is illustrated in *People v. Moloi*, 135 A.D.2d 576, 521 N.Y.S.2d 794, 796 (2d Dep't 1987). There, a defendant, who had beaten the victim and thrown a pot of boiling oil at her, was convicted of two counts of first-degree assault: intending to cause serious physical injury, in violation of N.Y. Penal Law § 120.10[1], and acting with a conscious disregard for the risk of death that such conduct created, in violation of N.Y. Penal Law § 120.10[3]. *Moloi*, 521 N.Y.S.2d at 795. The court compared the elements of the two first-degree assault counts and found that they were consistent. *Id.* at 796. As the Appellate Division explained,

> That a defendant may have committed an act with the intent to seriously injure another person does not rule out the possibility that he may have also unintentionally (and recklessly) created a risk of such person's death, since not all "serious" injuries are necessarily life threatening. Thus, it is clear that a defendant could hypothetically engage in conduct which intentionally results in serious physical injury, and unintentionally creates a grave risk of death ....

*Id.* (internal quotations omitted).

The New York legislature has enacted several statutes that proscribe conduct that, in a single act, is at the same time intentional as to one result and reckless as to another. *See, e.g., People v. Ruiz*, 151 Misc.2d 757, 573 N.Y.S.2d 845, 846–47 (Sup.Ct.1991) (citing N.Y. Penal Law § 120.05[8] and § 125.20[4] ). One of the statutes at issue in this case is a paradigmatic example.

Sweet was charged with a particular first-degree manslaughter count,

§ 125.20[4], that requires proof of both an "intent to cause physical injury" and "recklessly engag[ing] in conduct which creates a grave risk of serious physical injury to [a person less than eleven years old] and thereby causes the death of such person." Within § 125.20[4] itself, the legislature proscribed conduct involving two different mental states with regard to different results: (1) an *intent* to *injure* and (2) *recklessness* as to the possibility of the more culpable result of *serious injury*. Sweet was separately charged with a particular second-degree murder count, § 125.25[4], that did not require proof of intentional conduct; it required proof that the crime was committed "[u]nder circumstances evincing a depraved indifference to human life" and that the defendant "recklessly engage[d] in conduct which create[d] a grave risk of serious physical injury or death to another person less than eleven years old and thereby cause[d] the death of such person." Because the requirement of § 125.25(4) that the defendant act "[u]nder circumstances evincing a depraved indifference to human life" is not a *mens rea* element under New York law, *People v. Cole*, 85 N.Y.2d 990, 629 N.Y.S.2d 166, 652 N.E.2d 912, 913 (1995), § 125.25[4] thus requires proof of only one mental state as to one result: recklessness as to "conduct which creates a grave risk of serious physical injury." The evidence in this case could support a finding that Sweet brutally and intentionally beat three-year-old Nina Fiser, while recklessly risking her death, indifferent as to whether she died.

Quite plainly under New York's "inconsistent verdicts" provision, there is nothing inconsistent with the two homicide counts charged here because "guilt of the offense charged in one [does not] necessarily negate[ ] guilt of the offense charged in the other." N.Y.Crim. Proc. Law § 300.30[5]. Sweet's intent to physically injure his victim is fully consistent with his recklessness

as to a grave risk of her "serious physical injury," as required by § 125.20[4], and to the grave risk of "serious physical injury or death" under circumstances evincing a depraved indifference to human life, as required by § 125.25[4].

Although the foregoing analysis of the elements is straightforward, the New York courts have complicated the matter. In *People v. Robinson*, 145 A.D.2d 184, 538 N.Y.S.2d 122 (4th Dep't 1989), *aff'd mem.*, 75 N.Y.2d 879, 554 N.Y.S.2d 473, 553 N.E.2d 1021 (1990), the defendant punched and kicked the victim into a state of unconsciousness, bound him with electrical cord, transported him to a public park, and abandoned him there on the snow-covered ground, where the victim died of hypothermia. The defendant was convicted of first-degree manslaughter, pursuant to N.Y. Penal Law § 125.20[1] ("With intent to cause serious physical injury to another person, [the defendant] causes the death of such person or of a third person[.]"), and second-degree murder, N.Y. Penal Law § 125.25[2] ("Under circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person[.]"). The intent element in the manslaughter charge applies to the potential result of serious physical injury, while the recklessness element in the murder charge applies to conduct creating a grave risk of death. Following the analysis described above, there is nothing inconsistent with these counts: The jury could have found that, in beating the victim unconscious, the defendant demonstrated an intent to cause serious physical injury while at the same time recklessly creating a grave risk of death. Additionally, the jury could have found the recklessness element on the separate ground

that the defendant tied the victim up and abandoned him in snow.

Nevertheless, the Fourth Department reversed the convictions on the basis of inconsistent verdicts. *Robinson*, 538 N.Y.S.2d at 123. Rather than examining each *mens rea* element in the appropriate context of the potential result to which it is tied in the statute, the Fourth Department expanded the scope of the *mens rea* to relate to the complete charge and the statute's ultimate result (*i.e.*, death). *Id.* at 123 & n. 1. Accordingly, even though the intent component of the manslaughter count related only to serious physical injury, the Fourth Department broadly swept the ultimate result of death under the intent rubric by categorizing the manslaughter charge as "intentional homicide,"[1] and then equated the facts at hand with those of *Gallagher* to vacate the conviction. It stated: "Here, as in *Gallagher*, 'because the jury found defendant guilty of both intentional and reckless homicide, it is impossible to determine what if anything the jury decided on the issue of defendant's mental state at the time of the offense.'" *Id.* at 123 (quoting *Gallagher*, 516 N.Y.S.2d 174, 508 N.E.2d at 910–11).

The *Robinson* majority's categorization elided the substantial difference between an intent to cause *serious physical injury* in the manslaughter count under § 125.20[1], and an intent to *kill*, which is not present in the provision. *Compare* § 125.20[1] *with* § 125.27[1] (first-degree murder provision requiring proof of an "intent to cause . . . death") and § 125.25[1] (second-degree murder provision requiring proof of "an intent to cause . . . death"). In *Gallagher*, unlike in *Robinson*, the defendant's second-degree murder conviction required a finding of an "intent to cause the death of another person." § 125.25[1]. It is this element that makes § 125.25[1] an "intentional homicide" count that is inconsistent with the reckless homicide count, § 125.15[1], not simply the fact that § 125.25[1] contains a mental element of intent somewhere within the provision.

By mistakenly focusing on the label "intentional homicide", and hence, on the counts' ultimate result (death) rather than on the specific results tied to the *mens rea* elements of each count (serious physical injury and risk of death), the Fourth Department departed from the Court of Appeals' precedents in *Loughlin*, 559 N.Y.S.2d 962, 559 N.E.2d at 657–58, and *Tucker*, 447 N.Y.S.2d 132, 431 N.E.2d at 620. *See also Robinson*, 538 N.Y.S.2d at 124–27 (Boomer, J., dissenting).

The incorrectness of the *Robinson* analysis becomes evident when it is viewed in

---

1. To support its labeling of the first-degree manslaughter count as "intentional homicide," the majority in *Robinson* cited two sources. *Robinson*, 538 N.Y.S.2d at 123 n. 1. The first was a dissenting opinion that described first-degree manslaughter as "intentional homicide" in an off-handed parenthetical comment, *People v. Willis*, 107 A.D.2d 1058, 486 N.Y.S.2d 569, 571 (4th Dep't 1985) (Hancock and Denman, JJ., dissenting). The second is a practice commentary authored by a New York state judge on the homicide section of the penal code. William C. Donnino, "Practice Commentary, Article 125–Homicide, Abortion and Related Offenses," *reprinted in* N.Y. Penal Law § 125.05 (McKinney's 1998). However, Judge Donnino explains that he divides the entire homicide article into four broad categories of "intentional homicide," "reckless homicide," "criminally negligent homicide," and "child homicide" "[f]or commentary purposes." *Id.* at 227, 486 N.Y.S.2d 569. Moreover, neither source was offering a legal conclusion concerning the applicable *mens rea* of such a manslaughter count, nor did they contemplate the effect the category "intentional homicide" might have on the analysis of the consistency of verdicts. In many of the crimes included in Donnino's "intentional homicide" category, the homicide itself was not intentional.

the light of single provisions that contain multiple *mens rea* elements, such as the first-degree manslaughter count of which Sweet was convicted, § 125.20[4]. This provision requires proof of both an intent to cause physical injury and recklessness in creating a grave risk of death. Does this statute charge both "intentional homicide" and "reckless homicide"? Under the reasoning of *Robinson*, this statute could be said to charge both impermissibly, and it would be "inconsistent," despite containing no internal inconsistency. Such a bizarre result demonstrates the flimsiness of *Robinson*'s reasoning-by-labels approach. Simply put, I think *Robinson* was poorly reasoned and wrongly decided.

Instead of resolving the confusion created by *Robinson*, I am afraid the Court of Appeals only exacerbated it, first by summarily affirming the Fourth Department's decision, *People v. Robinson*, 75 N.Y.2d 879, 554 N.Y.S.2d 473, 553 N.E.2d 1021 (1990), and then, in *People v. Trappier*, 87 N.Y.2d 55, 637 N.Y.S.2d 352, 660 N.E.2d 1131 (1995), by confoundingly trying to reconcile *Robinson* with its earlier precedents. In *Trappier*, the defendant, after a confrontation with a security guard, fired three shots in the guard's direction. One bullet hit the guard's pants leg, and another travelled past his ear. A jury convicted the defendant of first-degree attempted assault, § 120.10[1] ("With intent to cause serious physical injury to another person, [the defendant] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument[.]") and of first-degree reckless endangerment, N.Y. Penal Law § 120.25 ("A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person.").

The Court of Appeals correctly ruled that *Trappier*'s conviction on both counts was consistent. First, the Court of Appeals reconfirmed the rule enunciated in *Tucker* and *Loughlin* that "[i]n order to determine whether the jury reached 'an inherently self-contradictory verdict' a court must examine the essential elements of each count as charged." *Trappier*, 637 N.Y.S.2d 352, 660 N.E.2d at 1133 (quoting *Tucker*, 447 N.Y.S.2d 132, 431 N.E.2d at 620, and citing *Loughlin*, 559 N.Y.S.2d 962, 559 N.E.2d at 657–58). Then the court characterized its decision in *Gallagher* as holding "that a defendant who acts with the conscious objective of bringing about a particular result cannot simultaneously act with conscious disregard of a substantial and unjustifiable risk that the very result will occur." *Id.* In *Gallagher*, the defendant could not simultaneously intend to kill the victim and recklessly create a risk of death. By contrast, in *Trappier*, the court held that the defendant

> could certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more serious result—death—would ensue from his actions. Defendant, for example, could have fired at [the guard] with the intent to cause him only serious and protracted disfigurement and simultaneously consciously disregarded a substantial and unjustifiable risk that, by so doing, he would create a grave risk of a more severe outcome, [the guard's] death. Thus, a finding that defendant was guilty of attempted first degree assault did not "necessarily negate [his] guilt" of first degree reckless endangerment.

*Id.* at 1133–34 (quoting N.Y.Crim. Proc. Law § 300.30[5] ). This reasoning properly tracks each element and analyzes the consistency between the *mens rea* elements based on the result directly associated with each one.

The Court of Appeals then ran into trouble, however, when it attempted to distinguish *Robinson*. The court accepted the Fourth Department's reasoning that equated *Robinson* with *Gallagher*:

> While the inconsistent counts in *Robinson* involved the same culpable mental states at issue here, the defendant in *Robinson*—like the defendant in *Gallagher* and unlike the defendant in the instant case—was convicted for acting intentionally and recklessly as to *the same result*, the death of the victim. Thus, although the Appellate Division dissent in *Robinson* correctly concluded that intentional and reckless conduct are mutually exclusive "only when the two culpable mental states concern the same result," the dissent overlooked the fact that the two homicide counts in *Robinson* did indeed involve identical outcomes.

*Id.* at 1134, 516 N.Y.S.2d 174, 508 N.E.2d 909 (quoting *Robinson*, 538 N.Y.S.2d at 123) (emphasis in original) (internal citations omitted). This analysis, rather than comparing the elements of the two counts, looked instead to the ultimate result underlying the charge, "the death of the victim." In doing so, the Court of Appeals perpetuated the faulty reasoning in *Robinson* by stating inaccurately that Robinson was convicted of acting "intentionally and recklessly *as to the same result*." (emphasis added). As discussed above, although Robinson may have acted both intentionally and recklessly in the process of causing the same result, under the proper pre-*Robinson* analysis it is more appropriate to say that he acted intentionally *as to* causing serious physical injury, but recklessly *as to* causing a grave risk of death.

The upshot of all of this is that in the wake of *Trappier*, New York now has two different rules for determining inconsistency: one comparing the elements, and one comparing ultimate results. The first rule follows prior Court of Appeals precedent in *Loughlin* and *Gallagher*, the language of N.Y.Crim. Proc. Law § 300.30[5], and common sense. The second rule, it seems to me, abandons them. Regrettably, New York courts are continuing to apply the second rule. *See, e.g., People v. Helliger*, 96 N.Y.2d 462, 729 N.Y.S.2d 654, 754 N.E.2d 756, 759 (2001) (expressly "declin[ing] to overrule *Robinson*" because the Court of Appeals was "unwilling to upset established precedent"); *People v. Horning*, 263 A.D.2d 955, 694 N.Y.S.2d 824, 825 (4th Dep't 1999). New York's "inconsistent verdicts" doctrine needs more consistency itself. This, of course, is a problem that only the New York Court of Appeals can rectify.